**PACKWOOD v. BRIGGS & STRATTON CORP. et al.**

No. 10583.

United States Court of Appeals
Third Circuit.

Argued Feb. 8, 1952.

Decided April 23, 1952.

Rehearing Denied May 29, 1952.

Ira Milton Jones, Milwaukee, Wis. (Arthur G. Connolly, Wilmington, Del., on the brief), for appellants.

972

Brown Morton, Jr., New York City (Thomas Cooch, Wilmington, Del., John E. Hubbell, New York City, on the brief), for appellee.

Before KALODNER and HASTIE, Circuit Judges, and MODARELLI, District Judge.

HASTIE, Circuit Judge.

In a patent infringement suit a jury found plaintiff's patent valid and infringed by defendants. Thereafter, the trial judge, while candidly stating his own conviction that the patent was invalid for lack of invention, denied defendants' motion for judgment n. o. v., reasoning that he had no authority to substitute his judgment on the contested issue of invention for that of the jury. On this appeal we have to decide whether this deliberate self restraint was error or proper deference to the role and action of the jury.

In essence, the alleged invention is a rotating screen for use on power lawn mowers which operates to arrest and by centrifugal force to deflect grass and other foreign particles from the entrance to the air-cooling system of the motor.[1] It was stipulated, however, that the design of power mowers with fixed screens, admittedly identical with rotating screens in their common function of keeping the air stream free from debris, is prior art as to the patent in suit. Rotating screens are fastened to the fan shaft, fixed ones, to the fan casing, these being the only two practicable points of attachment. "The invention", to sum up in the words of counsel for plaintiff, "[I]n a narrow sense was the addition to the already existing engine of this screen, or * * * changing the fastening of the screen from its outer periphery, where it was fastened to the shroud opening [fan casing], to the pulley where it was fastened to the pulley [fan shaft] * * *." The rotating screen, moreover, in point of uncontradicted evidence, differs neither in its ultimate purpose, its means of execution, nor in its method of attachment, from the Knight patent, No. 1,789,871, issued fifteen years prior to application by Packwood for the patent in suit. The Packwood screen is designed to divert "light weight particles such as leaf and paper fragments", "severed grass blades", and "small", "light" or "moist" "bodies", the Knight screen, "particles of dust or abrasive material" and "heavier than air particles"; both screens accomplish their purpose by centrifugal force; and both are secured to the rotating fan shaft of an internal combustion engine.

With the foregoing facts established at the trial below, what survived, by way of novelty or advance over prior art, upon which to predicate a finding of invention in the Packwood screen? If anything remained, it could only be the novelty of the combination of elements in lawn mowers or the mechanical adaptation of a rotating screen for use in power mowers specifically, as opposed to internal combustion engines generally. The jury apparently concluded that the skill and ingenuity involved in this adaptation of a familiar combination constituted invention for it brought in a verdict that plaintiff's patent is "valid as to lawn mowers only".

---

1. Packwood filed application for the original of the patent in dispute on August 7, 1946; it issued on July 27, 1948, as No. 2,445,965. He filed application for reissue on September 2, 1948; it issued on September 13, 1949, as No. Re.23,146. An adequately illustrative claim reads:

"2. In a lawn mower, the combination with the lawn mower framework, of a rotary grass cutter and an internal combustion motor having a rotating driving shaft mounted in said framework, a motor cooling fan comprising a rotating air impeller carried by said shaft at one side of the motor and a fan casing enclosing said impeller and having an air inlet at the opposite side of the impeller from said motor and having an outlet for the discharge of cooling air against the motor, a starting pulley mounted on said shaft and having a portion at the outer side of said inlet opening and an inlet screen at the outer side of said inlet opening and extending across the path of air flow through said opening and connected to and supported and rotated by said pulley, whereby bodies which the air drawn into the casing through said inlet tends to carry into the fan casing, are arrested by the screen and when dislodged, pass into the space external to said casing."

■ This finding of invention and validity was very clearly wrong. A jury in a patent case is not free to treat invention as a concept broad enough to include whatever discovery or novelty may impress the jurors favorably. Over the years the courts of the United States, and particularly the Supreme Court, have found meaning implicit in the scheme and purpose of the patent laws which aids in the construction of their general language. In this process, rules and standards have been developed for use as guides to the systematic and orderly definition and application of such a conception as invention in accordance with what the courts understand to be the true meaning of the Constitution and the patent laws. Once such standards and rules are authoritatively announced any finding of "invention" whether by a court or a jury must be consistent with them.

This is no peculiarity of patent law. Jury findings of negligence or proximate cause must comport with common law rules devised to give reasonable and systematic meaning to those generalities. For such rules, see Restatement of the Law, Torts, Negligence, Chs. 12–16. And so it is throughout the body of the common law. This authority and responsibility to keep jury findings within reasoned rules and standards is an essential function of United States judges today as it long has been of common law judges. See Capital Traction Co. v. Hof, 1899, 174 U.S. 1, 13–16, 19 S.Ct. 580, 43 L.Ed. 873. It stands as a great safeguard against gross mistake or caprice in fact finding.

■ Certain of the well established principles which make for reasonable, orderly and systematic definition and application of the conception of invention in patent cases reveal very clearly that there was no invention in what plaintiff did in this case. A discovery or devising must add something of significance, though not necessarily very much, to scientific knowledge if it is to take on the quality of invention under a statutory scheme which gives the inventor, for a number of years, a legally protected monopoly in a legal order which generally abhors monopoly. Courts sometimes attempt to describe this quality which invention must reveal as "creative" or as revealing "genius". E. g., Jungersen v. Ostby & Barton Co., 1949, 335 U.S. 560, 566, 69 S. Ct. 269, 93 L.Ed. 235; Cuno Engineering Corp. v Automatic Devices Corp., 1941, 314 U.S. 84, 91, 62 S.Ct. 37, 86 L.Ed. 58; Concrete Appliances Co. v. Gomery, 1925, 269 U.S. 177, 185, 46 S.Ct. 42, 70 L.Ed. 222. Impossible as precision is in such description, the requirement of creative discovery adding to scientific knowledge makes it clear why many alleged inventions are unquestionably outside of the area protected by the patent laws.

■■ This conception has been particularly helpful in the evaluation of those discoveries in the field of mechanics which have involved only combinations of old and familiar elements and ideas. When, if ever, can such combination be said to add to scientific knowledge? The reasonable and accepted answer is if, but only if, the particular combination yields some surprising or extraordinary result. Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 1950, 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162. "The mere aggregation of a number of old parts or elements which, in the aggregation, perform or produce no new or different function or operation than that theretofore performed or produced by them, is not patentable invention." Lincoln Engineering Co. v. Stewart-Warner Corp., 1938, 303 U.S. 545, 549, 58 S.Ct. 662, 664, 82 L.Ed. 1008. We think, even on patentee's own analysis, the present is as plain a case as can be found of a combination of old mechanical devices and ideas producing no unusual result and adding nothing to scientific knowledge.

In Ryan Distributing Corp. v. Caley, 3 Cir., 1945, 147 F.2d 138, 142, this court pointed out that entry of judgment n. o. v. is the appropriate corrective action when a jury has found a patent valid although the court's application of defining principles reveals "a clear-cut case of lack of invention". Also indicating the propriety of thus overruling the trier of fact is the already cited Atlantic and Pacific case where the Supreme Court reversed a finding of invention duly made and approved by both a district court and a court of appeals. In the

974

instant case the district court should have entered judgment n. o. v. upon the basis of a ruling that, consistent with controlling standards, the device in suit plainly could not embody invention.

This patent of the obviously unpatentable and indications that the category of patented unpatentables is a large one,[2] cause us to express a final word of regret that the Patent Office in analyzing and disposing of patent applications does not more consistently use that expertise with which courts credit it along with other specialized administrative agencies. For by issuing such patents as the one in suit, the administrative agency without substantial justification clogs commerce and imposes upon those who thereafter must contest the issue in the courts and those who must decide it there time consuming and expensive procedure, all in order that the result may ultimately be reached which the administrative agency so plainly should have reached in first instance.

The judgment will be reversed.

2. See enumeration by Mr. Justice Douglas in the A. & P. case, supra, 340 U.S. at pages 156–158, 71 S.Ct. at pages 132, 133.