Don E. HUGHES, Plaintiff,

v.

SALEM CO-OPERATIVE COMPANY, Inc., a nonprofit corporation, Defendant,

and

Prater Pulverizer Company, Intervening Defendant.

Civ. A. No. 1984.

United States District Court
W. D. Michigan, S. D.

Sept. 22, 1955.

Frank E. Liverance, Jr., and Dilley & Dilley and Abner D. Dilley, Grand Rapids, Mich., for plaintiff.

Thiess, Olson & Mecklenburger, Sidney Neuman, and Fred T. Williams, Chicago, Ill., John Duncan McDonald, Grand Rapids, Mich., for defendants.

STARR, Chief Judge.

Plaintiff Don E. Hughes, the patentee and owner of United States Letters Patent No. 2,227,090 issued December 31, 1940, on application filed April 1, 1940, for improvements in a "crushing and grinding machine," filed complaint alleging infringement by defendant Salem Co-operative Company, Inc., a Michigan nonprofit corporation. He asked for an injunction against further infringement and for damages, costs of suit, and attorney fees. Upon its motion and with plaintiff's consent, the Prater Pulverizer Company, an Illinois corporation, which manufactured and sold to defendant Salem Co-operative, and also to other users, the crushing and grinding machines which are alleged to infringe plaintiff's patent, was granted leave to intervene as a party defendant and file answer. For sake of brevity the plaintiff is herein referred to as "Hughes," defendant Salem Co-operative Company as "Salem," and intervening defendant Prater Pulverizer Company as "Prater." The defendants filed separate answers alleging that plaintiff's patent is invalid because of prior art anticipation and lack of invention, and denying infringement. It was stipulated that only claims 5, 9, 10, and 11 of the patent are alleged to be infringed.

In support of their claim of invalidity of patent because of prior art anticipation and lack of invention the defendants cite the following patents: Muhlig 56,-083 issued July 3, 1866; Jones 362,971 issued May 17, 1887; Boll 805,899 issued Nov. 28, 1905; Lavagnino 876,812 issued Jan. 14, 1908; Mansfield 1,092,222 issued Apr. 7, 1914; Blum 1,185,620 issued June 6, 1916; Lauterbur 1,525,506 issued Feb. 10, 1925; Prater 1,591,560 issued July 6, 1926; Lauterbur 1,612,976 issued Jan. 4, 1927; Duvall 1,713,957 issued May 21, 1929; Peters 1,847,193 issued Mar. 1, 1932; Gredell 1,928,887 issued Oct. 3, 1933. The file wrapper indicates that of the above only the Peters and Gredell patents were cited as references by the examiner. In further support of their claim of invalidity of patent on the ground that plaintiff was not the first inventor of his claimed improvements in a crushing and grinding machine, defendants allege that his claimed improvements were known and used by others in this country before his discovery and invention thereof.

The crushing and grinding machine in which plaintiff's claimed improvements are incorporated and the defendants' accused crushing and grinding machine, are both of the long-known, conventional impact or hammer type, comprising a cylindrical-shaped housing with a rotatable shaft mounted between the end plates and with a plurality of hammers or impacting members attached to the shaft for high speed rotation within the housing. In such a conventional type of machine means is provided for moving grain or other material into the central portion of the cylindrical housing, where it is subjected to the crushing and pulverizing effect of the rapidly rotating hammers. Means is also provided for discharging the pulverized or comminuted particles from the housing through a screen, the maximum size of the discharged particles being controlled by the size of the perforations in the screen; thus if a coarse grind is desired, a screen with large perforations is used, and if a fine grind is desired, a screen with small perforations is used. Clearance is provided between the ends of the hammers or impact members and the screen so that the screen does not function as a grinding surface.

574

In the specifications of his patent for claimed improvements in the conventional type of crushing and grinding machine, plaintiff states in part:

"The present invention relates to a grinding and crushing machine of the swinging hammer or hammer mill type such as is commonly used in the milling of grains and for grinding and crushing many other articles in processing thereof. Generally speaking, the invention relates to the provision of a novel type screen for such a machine, which is adjustable lengthwise thereof and is provided with apertures of different sizes selectively positionable by the adjustment of the screen to regulate the size or fineness of the ground product and thereby enable custom grinding of grain and the like. More particularly, the invention includes devices of one type or the other for automatically shifting the screen and positioning the same and in further devices for firmly clamping the same against the sides of the grinder housing so as to completely seal the same and prevent exit of the ground stock from the housing other than through the grinding apertures. All these instrumentalities are actuable and controllable from a point remote from the machine itself."

Plaintiff's patent provides for parallel, aligned, arcuate slots in the opposed side walls of the cylindrical-shaped housing to receive an elongated, arcuate screen mounted on the housing, said elongated screen consisting of separate sections of screen with different-sized perforations or mesh, said sections being compositely connected together end to end. The patent provides that this elongated arcuate screen, consisting of sections with different-sized perforations, can be moved longitudinally in the parallel slots back and forth through the housing, and that the section of the screen with the desired perforations can be adjusted and clamped into position in the housing by the manual operation of connecting rods extending vertically to an upper floor of the mill building. The means for clamping the desired section of the screen into position closes the two arcuate slots in the housing and prevents the exit of the ground material through the slots. Claims 5, 9, 10, and 11 of plaintiff's improvement patent, which are claimed to be infringed and which are reasonably illustrative of all claims, provide as follows:

"5. In a grinding machine of the type described having a housing wherein hammers are rotatably mounted, an elongated arcuate screen having a plurality of longitudinally disposed sections thereof provided with grinding and grading apertures of different sizes, said housing having side walls provided with arcuate slots receiving the screen for longitudinal translational adjustment of the screen with reference to the housing, means for actuating the screen for translational adjustment to selectively position said sections relative to the housing and hammers, and means for clamping the screen on the housing in adjusted position thereof, said last named means slidably engaging the side walls above the screen and closing the opening afforded by said slots not occupied by the screen."

"9. In a grinding machine having a housing and a grinding member operatively mounted in the housing, an elongated arcuate screen shiftably mounted on the housing and adjustable with reference to the housing to longitudinally position different areas of the screen selectively relative to the housing, said housing having side walls provided with arcuate slots axially alined with one another for receiving the screen, means operable at a point remote from the machine to longitudinally adjust the screen to selectively position said areas, and means for clamping said screen against said side walls at the slots therein

when the screen is in longitudinally adjusted position."

"10. In a grinding machine having a housing and a grinding member operatively mounted in the housing, an elongated arcuate screen shiftably mounted on the housing and adjustable with reference to the housing to longitudinally position different areas of the screen selectively relative to the housing, means to longitudinally adjust the screen to selectively position said areas, and means for clamping said screen against said side walls when the screen is in longitudinally adjusted position."

"11. In a grinding machine having a housing and a grinding member operatively mounted in the housing, an elongated arcuate screen shiftably mounted on the housing and adjustable with reference to the housing to position different areas of the screen selectively relative to the housing, said housing having side walls provided with arcuate slots axially alined with one another for receiving the screen, means to adjust the screen, and means for clamping said screen against said side walls at the slots therein when the screen is in adjusted position."

The accused machine manufactured by defendant Prater and used by defendant Salem, a reduced-scale working model of which was put in evidence, is also the conventional type of crushing and grinding machine having a cylindrical-shaped housing with opposed vertical side walls. In one side wall is an arcuate slot through which a single arcuate screen is passed into the housing and withdrawn back out of the housing. The opposite side wall of the housing is not provided with an arcuate slot or opening, as the single screen does not pass on through the housing as the composite elongated screen does in the plaintiff's patent. When not in use the separate screens with different-sized perforations are nested together, one over the other, outside of the machine housing. The screens are arcuate in form, and the end of each screen is attached to a horizontal bar which is connected to an arm joining with a bar telescopically received in the end of a horizontal guide tube and therein connected to a vertical rod extending to an upper floor of the mill building. By the manual operation of the vertical rod from the upper floor the screen to which that rod is connected can be moved through the one arcuate slot in the side wall into the machine housing and, by the reverse manipulation of the rod, can be withdrawn from the housing through the same slot. The screen with perforations of the desired size can thus, by manual operation of its connected vertical rod from the upper floor of the mill, be moved into and withdrawn from the machine housing. Means is also provided for clamping the screen in the housing and thereby closing the single arcuate slot opening in the housing side wall. The parties have filed a stipulation explaining in detail the construction and operation of the defendant's accused machine and the means provided for changing the separate arcuate screens by remote control from an upper floor of the mill building.

The first question presented for the court's determination is whether the patent in suit No. 2,227,090 is valid. It is presumed to be valid, 35 U.S.C.A. § 282, but that presumption of validity is rebuttable and in the present case the defendants cite Mansfield 1,092,222 issued April 7, 1914, and other prior art patents which were not cited and apparently not considered by the examiner. There is no presumption of validity over this prior art which the examiner did not consider. O'Leary v. Liggett Drug Co., 6 Cir., 150 F.2d 656, certiorari denied 326 U.S. 773, 66 S.Ct. 232, 90 L.Ed. 467. Furthermore, plaintiff Hughes, the patentee and owner of the patent in suit, is presumed to have had knowledge of the prior art in the field of crushing and grinding machines and of all devices in that field relating to types of screen used and to methods and means of changing screens. It has long

been established and is restated in the new Patent Act of 1952, 35 U.S.C.A. § 282, that the burden is upon the defendants to establish their claim of invalidity of patent, and this burden must be sustained by clear, satisfactory, and convincing evidence. General Motors Corp. v. Estate Stove Co., 6 Cir., 203 F.2d 912, 914 (opinion on rehearing); Crosley Corp. v. Westinghouse Electric & Mfg. Co., 3 Cir., 152 F.2d 895; 2 Walker on Patents, Deller's Ed., § 276, pp. 1272, 1273. If the patent in suit is valid, then the burden is upon the plaintiff to establish its claim of infringement. United States Rubber Co. v. General Tire & Rubber Co., 6 Cir., 128 F.2d 104, 108; Midland Steel Products Co. v. Clark Equipment Co., D.C., 75 F.Supp. 143, 149.

■ The new Patent Act of 1952, 35 U.S.C.A. § 1 et seq., did not change the basic tests for determining patentability, and the court must determine, within the meaning of the statute conferring patent monopoly, whether there is invention and patentability. In General Motors Corp. v. Estate Stove Co., 6 Cir., 203 F.2d 912 (on rehearing), the court held that the Patent Act of 1952 has neither raised nor lowered the standard of invention. See also Interstate Rubber Products Corp. v. Radiator Specialty Co., 4 Cir., 214 F.2d 546; Stanley Works v. Rockwell Mfg. Co., 3 Cir., 203 F.2d 846.

■ The plaintiff's patent in suit claiming improvements in a crushing and grinding machine of the impact or hammer-mill type is a combination improvement patent, in that it comprises an accumulation and aggregation of old parts or elements with some minor changes, modifications or substitution of equivalents. It has long been established that to constitute patentable invention an aggregation of old elements or parts or substituted equivalents therefor must cooperate to produce a new, unobvious, and unexpected result. If there is no invention, mere utility and novelty will not alone sustain the validity of a combination improvement patent. In Great

Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 150, 152, 71 S.Ct. 127, 129, 95 L.Ed. 162, the Supreme Court said:

"It is agreed that the key to patentability of a mechanical device that brings old factors into cooperation is presence or lack of invention. * * *

"The negative rule accrued from many litigations was condensed about as precisely as the subject permits in Lincoln Engineering Co. v. Stewart-Warner Corp., 303 U.S. 545, 549, 58 S.Ct. 662, 664, 82 L.Ed. 1008: 'The mere aggregation of a number of old parts or elements which, in the aggregation, perform or produce no new or different function or operation than that theretofore performed or produced by them, is not patentable invention.' To the same end is Toledo Pressed Steel Co. v. Standard Parts, Inc., 307 U.S. 350, 59 S.Ct. 897, 83 L.Ed. 1334, and Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 62 S.Ct. 37, 86 L.Ed. 58. The conjunction or concert of known elements must contribute something; only when the whole in some way exceeds the sum of its parts is the accumulation of old devices patentable. * * *

"Courts should scrutinize combination patent claims with a care proportioned to the difficulty and improbability of finding invention in an assembly of old elements. The function of a patent is to add to the sum of useful knowledge. Patents cannot be sustained when, on the contrary, their effect is to subtract from former resources freely available to skilled artisans. A patent for a combination which only unites old elements with no change in their respective functions, * * * obviously withdraws what already is known into the field of its monopoly and diminishes the resources available to skillful men. This patentee

has added nothing to the total stock of knowledge, but has merely brought together segments of prior art and claims them in congregation as a monopoly."

In the case of Buffalo-Springfield Roller Co. v. Galion Iron Works Mfg. Co., 6 Cir., 215 F.2d 686, 687, the appellate court stated the test of patentability as follows:

"The patent law requires not only that the subject-matter of a patent must possess novelty and utility but must also demonstrate an exercise of the inventive faculty. Seymour v. Ford Motor Co., 6 Cir., 44 F.2d 306. The Court of Appeals of the Ninth Circuit has recently in Kwikset Locks, Inc., v. Hillgren, 9 Cir., 210 F.2d 483, 486, put it this way: 'Moreover, a truly inventive combination must create what had not before existed or bring to light what lay hidden from vision in a way which can be distinguished from "simple mechanical skill." A mere advance in efficiency and utility is not enough to convert a noninventive aggregation into a patentable combination.'"

In General Motors Corp. v. Estate Stove Co., supra, 6 Cir., 203 F.2d 912, 917, 918, the Court of Appeals for this circuit said:

"The combination of the old parts or elements, in order to constitute patentable invention, must perform or produce a new and different function or operation than that theretofore performed or produced by them. It is not sufficient that the combination be superior to what went before in producing a more convenient and economical mechanism. Grinnell Washing Machine Co. v. E. E. Johnson Co., 247 U.S. 426, 38 S.Ct. 547, 62 L.Ed. 1196. Where a patentee combines the best features of old structures without the disadvantages of any of them, resulting in a substantial improvement in performance over anything which had gone before, it must be found, in order to sustain the patent, that the increase of efficiency of the new combination is an ' "unusual or surprising" consequence of the unification'; McCord Corp. v. Beacon Auto Radiator Co., Inc., 1 Cir., 193 F.2d 985, 989; or yields some 'surprising or extraordinary result'; Packwood v. Briggs & Stratton Corp., 3 Cir., 195 F.2d 971. * * *

"We are, however of the view that the principle stated in the Great Atlantic & Pacific Tea Co. case is not modified by the new [1952 Patent] Act, but continues to be the law, and is here controlling."

In the case of Application of Backhouse, 220 F.2d 283, 288, 42 C.C.P.A., Patents, ——, the court said:

"It is not enough that a thing is new and useful; it must amount to an invention or discovery to be entitled to protection under the patent laws. * * * An improvement, to be protected under the patent laws, must be the product of some exercise of inventive faculties and involve something more than that which is obvious to persons skilled in the art."

See also Hunter Douglas Corp. v. Lando Products, Inc., 9 Cir., 215 F.2d 372, 375; Interstate Rubber Products Corp. v. Radiator Specialty Co., 4 Cir., 214 F.2d 546, 548; Kwikset Locks, Inc., v. Hillgren, 9 Cir., 210 F.2d 483; Allied Wheel Products, Inc., v. Rude, 6 Cir., 206 F.2d 752, 760; McCord Corp. v. Beacon Auto Radiator Co., Inc., 1 Cir., 193 F.2d 985, 989; Sinclair & Carroll Co., Inc., v. Interchemical Corp., 325 U.S. 327, 330, 65 S.Ct. 1143, 89 L.Ed. 1644; Dow Chemical Co. v. Halliburton Oil Well Cementing Co., 324 U.S. 320, 65 S.Ct. 647, 89 L.Ed. 973; General Motors Corp. v. Estate Stove Co., 6 Cir., 201 F.2d 645, rehearing denied, 6 Cir., 203 F.2d 912; De Burgh v. Kindel Furniture Co., D.C., 125 F.Supp. 468; Spring-Air Co. v. Ragains, D.C., 96 F.Supp. 79.

An improvement in a machine or device, to be patentable, must not

only be new and useful but must involve invention. Cole v. Hughes Tool Co., 10 Cir., 215 F.2d 924. Minor or slight differences in the design and construction of a patented device over the prior art, involving no new principle and accomplishing nothing more than what one skilled in the art could readily see, does not amount to invention. Benjamin Electric Mfg. Co. v. Bright Light Reflector Co., Inc., 7 Cir., 111 F.2d 880. The transposition, integration or reallocation of old elements or parts does not amount to invention. General Machinery Corp. v. Clearing Machine Corp., 7 Cir., 104 F.2d 553; Robinson Aviation, Inc., v. Barry Corp., D.C., 106 F.Supp. 514. The improvement of one element or part in a combination of old elements or parts does not entitle a patentee to a monopoly on the entire combination. Lincoln Engineering Co. of Illinois v. Stewart-Warner Corp., 303 U.S. 545, 58 S.Ct. 662, 82 L.Ed. 1008; Bassick Mfg. Co. v. R. M. Hollingshead Co., 298 U.S. 415, 56 S.Ct. 787, 80 L.Ed. 1251. The mere carrying forward or the extended application of an earlier idea or conception of another, involving a change in form, proportion or degree, where the same work is performed in substantially the same way by substantially the same means although with better results, does not constitute invention. Advance in efficiency and utility is not sufficient to convert a noninventive aggregation of old elements and parts into a patentable combination. Buffalo-Springfield Roller Co. v. Galion Iron Works, supra; Cole v. Hughes Tool Co., supra.

Plaintiff Hughes testified in substance that his patent provided for an improvement in a crushing and grinding machine in that the screens could be changed while the machine was in operation, but it may be noted that this claimed functional improvement is not mentioned in his patent claims. However, this feature of changing screens while the machine is in motion was well known in the prior art and does not represent invention. The testimony in the present case indicates that Blum, Duvall, Gredell, and Baker et al.[1] patents all disclose arcuately shaped screen structures for use in crushing and grinding machines and that the screens could be changed while the machine was in operation; also that in Duvall, Gredell, and Baker et al. the screens were inserted through one or more arcuate slots formed in the side walls of the machine housing. Gredell in particular clearly discloses a crushing and grinding machine having replaceable screens with varying-sized perforations for obtaining the desired degree of fineness to which the grain or material was to be ground. Gredell also discloses axially aligned arcuate slots in the side walls of the machine housing through which arcuate shaped screens are moved into and out of the housing, and also shows means for clamping the screens in place within the housing, whereby the slot openings in the housing are closed. Furthermore, there was testimony that for many years prior to plaintiff's application for the patent in suit, defendant Prater had manufactured and sold crushing and grinding machines in which the screens could be changed while the mill was in operation.

The plaintiff's patent in suit provides for one elongated screen consisting of several sections with various-sized perforations or meshes, said sections being compositely connected end to end to form one continuous screen, which is movable longitudinally back and forth through the housing in the two aligned slots in the housing walls to selectively position different areas of the screen within the machine housing. This claimed feature of an elongated screen with different areas having different-sized perforations and being movable through the housing to provide for the selective screening of different-sized particles, was anticipated and disclosed in Mansfield 1,092,-222 issued April 7, 1914, which was not

---

[1]. Baker et al. issued on application filed July 27, 1939, which was prior to plaintiff's application on April 1, 1940.

cited and apparently not considered by the examiner in the Patent Office. Mansfield shows an adjustable, elongated screen member movable across an opening in a machine so as to selectively position different areas of the screen having variously sized perforations to obtain the desired screening effect.

Thus it is clear that plaintiff's alleged improvements in a crushing and grinding machine described in claims 5, 10, and 11 of his patent, consisting of aligned arcuate slots in the opposed side walls of the machine housing; an elongated screen composed of arcuate-shaped screens with different-sized perforations, longitudinally connected together end to end; means for adjusting and clamping the elongated screen in a desired position; and means for closing said slot openings, constitute only an accumulation and aggregation of old elements or parts which do not cooperate to produce any new, unobvious, and unexpected result. That is, these elements or parts claimed as improvements in a crushing and grinding machine do not represent invention within the meaning of the patent law. See Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162; Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 62 S.Ct. 37, 86 L.Ed. 58; Buffalo-Springfield Roller Co. v. Galion Iron Works, 6 Cir., 215 F.2d 686; Cole v. Hughes Tool Co., 10 Cir., 215 F.2d 924; Packwood v. Briggs & Stratton Corp., 3 Cir., 195 F.2d 971; McCord Corp. v. Beacon Auto Radiator Co., Inc., 1 Cir., 193 F.2d 985; De Burgh v. Kindel Furniture Co., D.C., 125 F.Supp. 468.

In the specifications of his patent plaintiff refers to the changing and adjustment of screens "from a point remote from the machine itself" by a shaft which "ordinarily extends upwardly to a point remote from and usually on a floor above that on which the machine is disposed, this being the conventional practice." In claim 9 of his patent plaintiff refers to "means operable at a point remote from the machine to longitudinally adjust the screen to selectively position said areas, and means for clamping said screen against said side walls at the slots therein when the screen is in longitudinally adjusted position." He claims this remote-control means as a patentable improvement in the conventional type of crushing and grinding machine. The patent in suit may be considered in connection with the specifications and the acompanying drawings, but the patent claims limit the scope of the patent, and the scope may not be enlarged by the specifications. Therefore, plaintiff's bare, functional statement in claim 9 of remote-control means for changing and adjusting the screens in the machine without specifying or explaining the steps or means to accomplish this result, certainly does not constitute a claim of patentability. Furthermore, the means provided in the plaintiff's patent for the movement and adjustment of the elongated screen in the machine by the manipulation of connecting rods extending to an upper floor of the mill building does not involve or amount to invention. The control of the operation of a machine or functioning part thereof by the use of extended connecting rods or means is old in many arts and fields. In Crosby Steam Gage & Valve Co. v. Ashton Valve Co., 1 Cir., 94 F. 516, 517, the court said:

"The only novelty covered by the claim in issue is the extension upward within and through the top of the valve case, and above the muffler, of means of controlling from the outside the regulating device. This extension, as shown in the drawings and specification, is by means of two straight rods passing vertically from the regulating ring, through the valve casing and the muffler, to points above the muffler and exterior to it. It is claimed that this was the first time in which such an extension appears in connection with a pop valve having a muffler. There is, perhaps, no doubt on the question of mere novelty; also, there is no doubt on the question of utility, as the de-

vice permits the regulating of the valve without removing the muffler, as stated in the claim.

"The difficulty is on the question of invention. It is admitted that in the earlier art such extensions had been made through the casings of valves which had no mufflers. The thought involved in the mere idea of having some contrivance by which any interior work can be controlled through a rod extending exteriorly, thus avoiding the necessity of taking apart, is, of course, a primary one in all the arts; so that the suggestion of making such a connection in this case clearly involved no invention."

In re Montgomery, 142 F.2d 262, 266, 267, 31 C.C.P.A., Patents, 1055, the court said:

"With respect to the element of the claims providing for remote control of the actuating means for adjustment, the examiner said:

" 'In the first place, the provision of a remote control means broadly for actuating the handwheel of Muehlmatt, even to the extent of using a shaft in the same is not considered to amount to invention.

" 'Such a means [of remote control] is common in many mechanical installations and its use here would produce no different function or result than would be expected.'

"As will be noted from our quotation from the decision of the board, it was of the opinion that this element does not render the claims containing the same patentable, and it expressed the opinion that the hand wheel of the Muehlmatt patent could, if thought desirable, be positioned at a distance from the chucking element.

"The examiner's statement that the use of a shaft to effect remote control is common in many installations, and its use in appellants' device would produce no different function or result than would be ex-pected, is not challenged in the record.

"It appears to us that while appellants' device is an improvement over the art of record, such improvement involved merely mechanical skill, and we are in agreement with the board that the features embraced in the claims are not sufficiently distinguished from the prior art to present patentable merit."

In Universal Products Co. v. Montgomery Ward & Co., 6 Cir., 146 F.2d 957, 959, 960, the court said:

"Adjustability only was involved and adjustability is not invention. Paquette v. Potter Mfg. Co., 6 Cir., 46 F.2d 271. See also United States Gypsum Co. v. Consolidated Expanded Metal Co., 6 Cir., 130 F.2d 888, 893."

It may be noted that claims 5, 10, and 11 of plaintiff's patent do not refer to a remote-control means for changing and adjusting screens and that claim 9 merely refers to the remote-control feature as a somewhat functional means. The remote-control means for changing the screens in a crushing and grinding machine through the manual manipulation of rods extending vertically from the machine to an upper floor of the mill may have produced a more convenient and possibly a slightly more economical method of operation of a crushing and grinding machine located in the basement of a small mill operated by one man, but such means certainly does not represent invention within the meaning of the patent law. See Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162; General Motors Corp. v. Estate Stove Co., 6 Cir., 203 F.2d 912.

Plaintiff Hughes testified in substance that he first conceived the idea of his claimed improvements in a crushing and grinding machine within a week prior to the filing of his patent application on April 1, 1940. There is evidence in this case that a crushing and grinding machine embodying means for changing

screens by remote-control from an upper floor of the mill building was conceived, built, tested, and operated by the Bauer Bros. Co. of Springfield, Ohio, prior to the date that plaintiff Hughes initially conceived the idea of remote control claimed in his patent. The testimony indicates that employees of Bauer Brothers conceived the idea of changing the screens in a crushing and grinding machine by remote control from an upper floor of the mill building in September, 1939; that drawings of the device or means of changing screens by remote control were prepared in November, 1939; that a machine embodying such means of changing screens was built in January or February, 1940; that the machine was actually run and tested in March, 1940; and that the machine was shipped by Bauer Brothers to Saginaw, Michigan, on March 22, 1940, and was successfully operated. There is no showing that the invention embodied in the machine conceived, built, and operated by Bauer Brothers prior to the plaintiff's initial conception of his claimed improvement for changing screens by remote control, was ever abandoned, suppressed or in any way concealed. As a matter of fact, the invention shown and included in the Bauer Brothers machine was embodied in the Rench & Ginaven patent No. 2,360,982 issued October 24, 1944, on application filed March 6, 1941. While recognizing that Rench & Ginaven cannot be considered as prior art, the fact that a crushing and grinding machine embodying the remote-control means for changing screens described in that patent was conceived, built, and operated prior to the plaintiff's conception of the remote-control means described in his patent indicates that the concept of changing screens by remote control was known and used by others in this country before the plaintiff's discovery or invention of such means. The former statute, 35 U.S.C.A. § 31, provided:

"Any person who has invented or discovered any new and useful art, machine, manufacture, or composi-

tion of matter, or any new and useful improvements thereof, * * * not known or used by others in this country, before his invention or discovery thereof, * * * may * * * obtain a patent therefor." Section 102 of the 1952 Patent Act, 35 U.S.C.A. § 102, provides:

"A person shall be entitled to a patent unless—

"(a) the invention was known or used by others in this country * * * before the invention thereof by the applicant for patent, or * * *

"(f) he did not himself invent the subject matter sought to be patented, or

"(g) before the applicant's invention thereof the invention was made in this country by another who had not abandoned, suppressed, or concealed it."

As Bauer Brothers conceived, constructed, tested, and successfully operated a crushing and grinding machine embodying means for the changing of the screens in the machine by remote control from an upper floor of the mill building prior to plaintiff's initial conception of his claimed improvement in the means for changing screens by remote control, it is clear that plaintiff was not the first inventor or discoverer of such means. See Corona Cord Tire Co. v. Dovan Chemical Corp., 276 U.S. 358, 384, 385, 48 S.Ct. 380, 72 L.Ed. 610; Vulcan Corp. v. United Shoe Machinery Corp., 6 Cir., 82 F.2d 195, 196; Jones v. Sykes Metal Lath & Roofing Co., 6 Cir., 254 F. 91, 94.

There is testimony in the present case indicating that approximately 55,000 or more crushing and grinding machines or mills of the impact or hammer type have been sold in this country since 1940 and that since the issuance of his patent in 1940 plaintiff Hughes has sold about 385 machines embodying his remote-control feature for changing screens. It is therefore obvious that the machines embodying the plaintiff's

claimed improvement for changing screens by remote control has had no substantial impact or importance in the industry.

In summary, the plaintiff's patent in suit combines an accumulation and aggregation of old elements or parts disclosed in the prior art with some minor, unpatentable changes, modifications or variations in construction and function. Similar results have been accomplished in the prior art and in crushing and grinding machines in prior use. The form and arrangement of the screens and the means or method of moving screens having different-sized perforations or mesh into and out of the housing of the machine, either by direct insertion and withdrawal or by remote control, are merely matters of choice of the engineer or mechanic constructing the machine to meet the particular needs of the mill in which it is operated. The improvements in the machine claimed by the plaintiff's patent would have been obvious to a mechanic having ordinary skill in the crushing and grinding art and who was conversant with the prior art. 35 U.S.C.A. § 103. The plaintiff is claiming an aggregation of old elements or parts with some minor, unpatentable changes and improvements in construction and function as a patent monopoly. The court is convinced that the patent in suit adds nothing to the total stock of knowledge in the field of crushing and grinding machines and does not constitute invention.

The court accordingly concludes that the claims of the plaintiff's patent for improvements in crushing and grinding machines are invalid because of prior art anticipation, lack of invention, and because plaintiff was not the first or original inventor of such improvements. The question of infringement does not require consideration, as an invalid patent cannot be infringed.

As the foregoing opinion sets forth the court's findings of fact and conclusions of law, separate findings and conclusions are not necessary. Rule 52(a), Federal Rules of Civil Procedure as amended, 28 U.S.C.A.; Western Pac. R. R. Corp. v. Western Pac. R. Co., 9 Cir., 197 F.2d 994, 1005.

Judgment will be entered dismissing the plaintiff's complaint and determining that all claims of his patent No. 2,227,090 are invalid. The defendant is entitled to recover court costs but not costs of suit.