Donald A. BELDEN, Arthur E. Swoboda, Joseph A. Bartole, Merlin C. Belden, Delbert B. Belden d/b/a Louver Manufacturing & Supply Company, Plaintiffs,

v.

AIR CONTROL PRODUCTS, Inc., Defendant.

Civ. A. No. 2302.

United States District Court
W. D. Michigan, S. D.

Aug. 24, 1956.

Oscar W. Giese, Washington, D. C., and Peter P. Price, Grand Rapids, Mich., for plaintiffs.

Earl & Webb, Otis A. Earl and Austin A. Webb, Kalamazoo, Mich., and Varnum, Riddering, Wierengo & Christenson and Carl J. Riddering, Grand Rapids, Mich., for defendant.

STARR, Chief Judge.

The plaintiffs as assignees and owners of United States Letters Patent No. 2,-458,134 issued January 4, 1949, for an adjustable ventilator, filed complaint alleging infringement by the defendant, a Michigan corporation. They asked for an injunction against further infringement and for damages and costs of suit. The defendant answered, alleging invalidity of patent because of prior art anticipation and lack of invention, and denying infringement. Prior to trial the defendant's motion for a summary judgment was denied; the plaintiffs' claim of unfair competition was withdrawn; and it was agreed that only claims 1 and 3 of the patent were alleged to be infringed.

In support of its claim of invalidity of patent because of prior art anticipation and lack of invention, defendant cites the following patents and publications: Dillon 569,550 issued October 13, 1896; Townsend 903,340 issued November 10, 1908; Derr 930,743 issued August 10, 1909; Schueler 1,217,225 issued February 27, 1917; Hoal 1,657,625 issued January 31, 1928; Haugh 2,-194,388 issued March 19, 1940; Jones 2,216,413 issued October 1, 1940; Siebenlist 2,340,570 issued February 1, 1944; Ferguson 2,389,970 issued November 27, 1945; Cutshall, design 134,-337 issued November 17, 1942; Sweet's catalog, 1937, section 8, pages 32, 33, and 34; American Sheet Metal Works catalog entitled, "Description, Price List and Drafting Room Information Hoal's Leak-Proof Louvers Patented"; H. H. W. Bergmann & Co. bulletin, "Copyright, 1937."

The ventilator described in plaintiffs' patent, and the ventilator now manufactured by plaintiffs which differs from the patent specifications as to the apex and louver connections, and defendant's accused ventilator are all designed to be fabricated of sheet metal and all embody the idea of an adjustable inverted V-shaped frame with expansible and contractible downwardly-inclined slats or so-called louvers, horizontally mounted in spaced parallel relation in the frame. All of these ventilators are designed and adapted for installation in the peak of

the roof gable of a house or other building, and all are adjustable in shape to accommodate roof gables of varying pitches. In all of said ventilators the louvers are inclined outwardly and downwardly to permit air flow and to prevent rain and other forms of precipitation from entering through the ventilator. Plaintiffs' patent contains three claims reading as follows:[1]

"1. A ventilator of the class described comprising an inverted V-frame made up of a pair of complemental channel-shaped members, corresponding ends of said members at one end of said V-frame being hingedly connected together, a plurality of ventilating louvers assembled between said frame members, said louvers being individually extensible and contractible and hingedly connected at their outer ends to the frame members.

"2. A ventilator of the class described comprising a frame made up of a pair of diverging channel-shaped members, the inner ends of said members being hingedly connected together, and louvers, each louver being made up of telescopically connected sections, the outer ends of the sections having laterally bent flanges, said frame members being provided with hinge pins, and said flanges being hingedly mounted on said pins.

"3. A louver-type attic ventilator of general triangular form adapted for use in an attic roof construction having downwardly and outwardly pitched roof members comprising an inverted V-frame embodying a pair of duplicate frame members hingedly connected, one to the other, at corresponding ends and thus adapted to be swung toward and from each other for adjustment purposes, a multiple louver ventilating panel embodying longitudinally extensible and retractible louvers, and means hingedly connecting the

outer ends of said louvers with said frame members, whereby the latter are lengthened or shortened as the frame members are spread apart or moved toward one another."

It may be noted that the above claims of plaintiffs' patent describe the channel-shaped side members of the V-frame as being "hingedly connected together" at their apex, and that the extensible and contractible ventilating louvers assembled between the frame members are described as being "hingedly connected" at their outer ends to the frame members. The patent drawings indicate that the hinged connection of the side members at their apex is by a common type of butt hinge such as is used to hang a door. The specifications provide that the louvers assembled in the V-frame comprise telescopically-connected sections provided at their outer ends with laterally directed wing-like flanges terminating in suitably bent hinges and attaching knuckles, and that the knuckles are "hingedly" mounted on cross pins in the channel sections of the side members. However, it may be noted that in the ventilators now manufactured and sold by the plaintiffs the hinge connection of the side members at their apex, and the hinge connection of the louvers to the side members, are substantially different from the hinge connections described in the specifications of the patent. That is, the drawings and specifications indicate that the side frame members are joined at their apex by a common type of butt hinge and that the ends of the louvers are attached to the side members by a pin extending through the knuckle-formed end of the louver and the side members, while in the ventilators now manufactured by plaintiffs the side members are connected at their apex by a metal strap integral with, and extending from, one side member over the apex to the other side member and secured to the other member by a rivet, and the louvers are attached to the side members by staples.

1. As hereinbefore stated, only claims 1 and 3 are alleged to be infringed.

The defendant's accused ventilator comprises adjustable side frame members arranged in an inverted V-shape with a plurality of telescopically-formed louvers extending horizontally between and flexibly connected to the side members. The upper ends of the side frame members in defendant's structure are not connected in any manner, but meet in close proximity and may be moved into abutting relationship so that the ventilator may be adjustably shaped into any desired triangular form. The outer ends of the louvers in defendant's structure are formed into triangular flanges with outwardly bent tabs which are passed through horizontal slots in the side members and bent over to connect the louvers to the side members. It is significant that in defendant's structure there is no hinge, rivet or mechanical connection whatever between the side frame members at their apex and no hinge connection between the louvers and side members. It is clear that the manner in which the side frame members of defendant's structure meet at their apex and in which the louvers of defendant's structure are connected to the side members is substantially different from the hinged connections described in the plaintiffs' patent.

The questions presented for determination by the court are: (1) Is the plaintiffs' patent No. 2,458,134 valid? and (2) if valid, are claims 1 and 3 infringed? It may be noted that plaintiffs in effect admit that none of the elements and parts of the ventilator described in their patent claims and specifications or embodied in the type of ventilator which they manufacture represent invention. They contend that the combination and structural arrangement of the group of known elements and parts create patentability and rely entirely upon the presumption of validity arising from the issuance of their patent. In the briefs plaintiffs state:

"The patentee does not claim to have invented (1) the use of a hinge to articulate a joint; (2) the idea of making attic ventilators triangular in shape; (3) the idea of mounting an attic ventilator at the peak of the gable; (4) the idea of providing ventilation for attic spaces; or (5) the use of telescoping louvers.

"Plaintiffs' case for validity is based upon (1) the statutory presumption; (2) that the invention involves a structural organization and an interrelationship of the component parts which was unknown before the invention and which was immediately recognized as solving a difficult problem and as such was quickly and widely adopted by the trade and to a great extent displaced other types of gable mounted, attic ventilators."

"The prior art did teach that fixed triangular ventilators of static shape and dimension were known. It also, separately, taught the structure of louvers of telescopic construction. While the prior art does not specifically show that the bringing together of the ends of two members to form a 'V' in a structural relationship permitting the members to rotate about the point of juncture will create a hinge, it is conceded that this was common knowledge."

"Plaintiffs' primary case on validity exists by reason of a statutory presumption specifically created by section 282 of the Patent Act of 1952."

The Patent Act of 1952, 35 U.S. C.A. § 1 et seq., did not change the basic tests for determining patentability, and the courts must determine, within the meaning of the statute conferring patent monopoly, whether there is invention and patentability. In General Motors Corp. v. Estate Stove Co., 6 Cir., 203 F.2d 912 (on rehearing), the court held that the Patent Act of 1952 neither raised nor lowered the standard of invention. See Hughes v. Salem Co-operative Co., D.C., 134 F.Supp. 572, 576; DeBurgh v. Kindel Furniture Co., D.C., 125 F.Supp. 468, 474, and authorities cited.

█ The patent claims define the scope and limit the boundaries of the plaintiffs' patent, and the validity of the patent is to be determined from its claims. The claims measure the invention. General Electric Co. v. Wabash Appliance Corp., 304 U.S. 364, 368, 369, 58 S.Ct. 899, 82 L.Ed. 1402. The specifications may explain but cannot expand or enlarge, the patent claims.

█ The plaintiffs' patent is presumed to be valid, 35 U.S.C.A. § 282; 3 Walker on Patents, Deller's Ed., § 701, page 2009; but it is well recognized that the presumption of validity is rebuttable, and in the present case the defendant cites several prior art patents and certain publications which were not cited and apparently not considered by the examiner. There is no presumption of validity over pertinent features of the prior art which the examiner did not consider. O'Leary v. Liggett Drug Co., 6 Cir., 150 F.2d 656, 664, certiorari denied 326 U.S. 773, 66 S.Ct. 232, 90 L.Ed. 467. Furthermore, the patentee of the patent in suit is presumed to have known and is chargeable with knowledge of everything disclosed by the prior art and publications in the ventilator field, and of all devices in that field which have been in prior public use. Zephyr American Corporation v. Bates Mfg. Co., 3 Cir., 128 F.2d 380; Cutler Mail Chute Co. v. Capitol Mail Chute Corporation, 2 Cir., 118 F.2d 63; Detroit Stoker Co. v. Brownell Co., 6 Cir., 89 F.2d 422, 424. It is well established and is restated in the new Patent Act of 1952, § 282, that the burden is upon the defendant to establish its claim of invalidity of patent, and this burden must be sustained by satisfactory and convincing evidence. General Motors Corp. v. Estate Stove Co., 6 Cir., 203 F.2d 912, 914 (on rehearing); Kawneer v. Pittsburgh Plate Glass Co., D.C., 109 F.Supp. 228, 232.

█ The plaintiffs' patent in suit comprises an accumulation and aggregation of long-known parts or elements, none of which it is admitted represent invention. To constitute patentable invention an aggregation of old, unpatentable elements or parts, or substituted equivalents, must cooperate to produce a new, unobvious, and unexpected result. Application of Bowen, 197 F.2d 553, 39 C.C.P.A., Patents, 1027. If invention is absent, mere utility and novelty are not alone sufficient to sustain the validity of a combination patent. The appellate court of this judicial circuit in Buffalo-Springfield Roller Co. v. Galion Iron Works Mfg. Co., 6 Cir., 215 F.2d 686, 687, stated the test of patentability as follows:

"The patent law requires not only that the subject-matter of a patent must possess novelty and utility but must also demonstrate an exercise of the inventive faculty. Seymour v. Ford Motor Co., 6 Cir., 44 F.2d 306. The Court of Appeals of the Ninth Circuit has recently in Kwikset Locks, Inc., v. Hillgren, 9 Cir., 210 F.2d 483, 486, put it this way: 'Moreover, a truly inventive combination must create what had not before existed or bring to light what lay hidden from vision in a way which can be distinguished from "simple mechanical skill." A mere advance in efficiency and utility is not enough to convert a noninventive aggregation into a patentable combination.' "

In General Motors Corp. v. Estate Stove Co., supra, 6 Cir., 203 F.2d 912, 917, 918, the Court of Appeals said:

"The combination of the old parts or elements, in order to constitute patentable invention, must perform or produce a new and different function or operation than that theretofore performed or produced by them. It is not sufficient that the combination be superior to what went before in producing a more convenient and economical mechanism. Grinnell Washing Machine Co. v. E. E. Johnson Co., 247 U.S. 426, 38 S.Ct. 547, 62 L.Ed. 1196. Where a patentee combines the best features of old structures without the disadvantages of any of them, resulting in a substantial improvement in per-

formance over anything which had gone before, it must be found, in order to sustain the patent, that the increase of efficiency of the new combination is an ' "unusual or surprising" consequence of the unification'; McCord Corp. v. Beacon Auto Radiator Co., Inc., 1 Cir., 193 F.2d 985, 989; or yields some 'surprising or extraordinary result'; Packwood v. Briggs & Stratton Corp., 3 Cir., 195 F.2d 971 * * *.

"We are, however of the view that the principle stated in the Great Atlantic & Pacific Tea Co. case [Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162] is not modified by the new [1952 Patent] Act, but continues to be the law, and is here controlling."

In Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 150, 152, 71 S.Ct. 127, 129, 95 L.Ed. 162, the Supreme Court said:

"It is agreed that the key to patentability of a mechanical device that brings old factors into cooperation is presence or lack of invention. * * *

"The negative rule accrued from many litigations was condensed about as precisely as the subject permits in Lincoln Engineering Co. of Illinois v. Stewart-Warner Corp., 303 U.S. 545, 549, 58 S.Ct. 662, 664, 82 L.Ed. 1008: 'The mere aggregation of a number of old parts or elements which, in the aggregation, perform or produce no new or different function or operation than that theretofore performed or produced by them, is not patentable invention.' To the same end is Toledo Pressed Steel Co. v. Standard Parts, Inc., 307 U.S. 350, 59 S.Ct. 897, 83 L.Ed. 1334, and Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 62 S.Ct. 37, 86 L.Ed. 58. The conjunction or concert of known elements must contribute something; only when the whole in some way exceeds the sum of its parts is the accumulation of old devices patentable. * * *

"Courts should scrutinize combination patent claims with a care proportioned to the difficulty and improbability of finding invention in an assembly of old elements. The function of a patent is to add to the sum of useful knowledge. Patents cannot be sustained when, on the contrary, their effect is to subtract from former resources freely available to skilled artisans. A patent for a combination which only unites old elements with no change in their respective functions, * * * obviously withdraws what already is known into the field of its monopoly and diminishes the resources available to skillful men. This patentee has added nothing to the total stock of knowledge, but has merely brought together segments of prior art and claims them in congregation as a monopoly."

 It is well recognized that the transposition, integration or reallocation of old elements or parts does not amount to invention. General Machinery Corp. v. Clearing Machine Corp., 7 Cir., 104 F.2d 553; Robinson Aviation, Inc., v. Barry Corp., D.C., 106 F. Supp. 514. The improvement of one element or part in a combination of old elements or parts does not entitle a patentee to a monopoly on the entire combination. Lincoln Engineering Co. of Illinois v. Stewart-Warner Corp., 303 U.S. 545, 58 S.Ct. 662, 82 L.Ed. 1008; Bassick Mfg. Co. v. R. M. Hollingshead Co., 298 U.S. 415, 56 S.Ct. 787, 80 L.Ed. 1251. The mere carrying forward or the extended application of an earlier idea or conception of another, involving a change in form, proportion or degree, where the same work is performed in substantially the same way by substantially the same means although with better results, does not constitute invention. Advance in efficiency and utility is not sufficient to convert a noninventive aggregation of old elements and parts into a patentable combination. Buffalo-

Springfield Roller Co. v. Galion Iron Works Mfg. Co., supra; Cole v. Hughes Tool Co., 10 Cir., 215 F.2d 924. Minor differences in design and construction of a patented device over the prior art, involving no new principle and accomplishing nothing more than what one skilled in the art could readily discern do not amount to invention. H. W. Gossard Co. v. Loeber's, Inc., 7 Cir., 114 F.2d 166, certiorari denied 312 U.S. 680, 61 S.Ct. 450, 85 L.Ed. 1119; Benjamin Electric Mfg. Co. v. Bright Light Reflector Co., Inc., 7 Cir., 111 F.2d 880.

 In the present case the plaintiffs claim patentability for the combination and arrangement of a group of old elements, and they rely on the presumption of validity arising from the issuance of their patent. The ventilator field is a crowded art, as ventilators have long been in common use. In considering claims for patentability of a combination of old elements in a crowded field, the court said in Shaffer v. Armer, 10 Cir., 184 F.2d 303, 307:

"To make sure that a monopoly is not granted for mere perfection of workmanship, the courts closely scrutinize claims to combinations for improvements in a crowded art. Halliburton Oil Well Cementing Co. v. Walker, 329 U.S. 1, 10, 67 S.Ct. 6, 91 L.Ed. 3."

See also Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162; Kobe, Inc., v. Dempsey Pump Co., 10 Cir., 198 F.2d 416; Hollywood-Maxwell Co. v. Street's of Tulsa, 10 Cir., 183 F.2d 261.

In Mathews Conveyer Co. v. Palmer-Bee Co., 6 Cir., 135 F.2d 73, 89, the court said:

"Patentability cannot rest on the observation in a given device of a usefulness not before noticed; and the fact that a party did not in fact use his mechanism for a particular purpose, or even that he did not foresee that such purpose would be

a useful one, is not material. William B. Mershon & Co. v. Bay City Box & Lumber Co., C.C.Mich., 189 F. 741. Discovery of new uses for, or newly observed functions of a device, well known in the mechanical or structural arts, is not patentable invention; Grand Rapids Refrigerator Co. v. Stevens, 6 Cir., 27 F.2d 243".

In the case of Baum v. Jones & Laughlin Supply Co., 10 Cir., 233 F.2d 865, 870, the court said:

"In Hutchinson Mfg. Co. v. Mayrath, supra, [10 Cir.] 192 F.2d [110] at page 113, it is said that 'where a patentee brings together old elements in a mechanism, involving no new principle, to produce an old result, although he produces a machine that is more efficient and hence more useful in the art, it is still the product of mechanical skill and not of invention.' Smith v. Hall, 301 U.S. 216, 232, 57 S.Ct. 711, 81 L.Ed. 1049; Altoona Publix Theatres v. American Tri-Ergon Corp., 294 U.S. 477, 486, 55 S.Ct. 455, 79 L.Ed. 1005."

In Hazeltine Corporation v. General Motors Corporation, 3 Cir., 131 F.2d 34, 39, 40, the court held that the ingenious application of known principles to a known problem by the use of devices already known and understood to produce a predictable result does not amount to invention. See also Slayter & Co. v. Stebbins-Anderson Co., Inc., 4 Cir., 117 F.2d 848; Utah Radio Products Co. v. General Motors Corporation, 2 Cir., 106 F.2d 5; Kellogg Switchboard & Supply Co. v. Michigan Bell Telephone Co., 6 Cir., 99 F.2d 203, certiorari denied 308 U.S. 582, 60 S.Ct. 104, 84 L.Ed. 487; Perfect Circle Co. v. Hastings Mfg. Co., 6 Cir., 88 F.2d 813.

 It should be noted that in the prosecution of the application for the patent in suit, claims 1, 2, and 3 of the application[2] were rejected by the ex-

2. "1. In a structural assemblage of the class described, in combination, an attic roof construction embodying outwardly and downwardly sloping portions includ-

aminer and canceled by the patentee, on the basis of the disclosure in Sweet's catalog, 1937 issue, section 8, page 33, relating to the shape of ventilators; and that claims 4 and 5 of the application[3] were rejected and canceled on the basis of the teachings of Ferguson 2,-389,970. The file wrapper history states in effect that the making of a V-shaped ventilator does not constitute invention and that making a V-shaped ventilator adjustable does not constitute invention. Claims 6 and 7 of the application, renumbered as claims 1 and 2, and claim 8 added by amendment and renumbered as claim 3, were allowed as claims 1, 2, and 3 of the patent in suit. However, as claims 1 to 5 of the application, embodying the idea of a V-shaped ventilator and the idea of an adjustable ventilator, were rejected by the examiner and canceled by the patentee, it is clear that the patentee cannot by interpretation expand his allowed claims to include the ideas rejected by the examiner, or their equivalents. In other words, plaintiffs cannot claim a scope for the patent in suit as broad as the claims which had been rejected by the examiner and which the patentee had abandoned during the prosecution of his patent application. Dolgoff v. Kaynar Company, D.C., 18 F.R.D. 424, 428. In D & H Electric Company v. M. Stephens Mfg., Inc., 9 Cir., 233 F.2d 879, 883, 884, the court said:

"Having asserted the novelty of the right angle principle in order to secure the patent, appellant cannot now expand his coverage to include other claims which were denied him in the proceedings before the patent office. This is simply the exercise of the doctrine of 'file wrapper estoppel'—the gravamen of which is that an applicant who acquiesces in the rejection of his claim, and accordingly modifies it to secure its allowance, will not subsequently be allowed to expand his claim by interpretation to include the principles originally rejected or their equivalents."

▪ Furthermore, the adjustability in shape of the plaintiffs' triangular ventilator structure does not constitute invention, as adjustability is merely a result and is not patentable. No inventive novelty may be attributed to the fact that a structure is adjustable. Hughes v. Salem Co-operative Co., D.C., 134 F.Supp. 572; Spring-Air Co. v. Ragains, D.C., 96 F.Supp. 79. The idea of an adjustable triangular frame is old in many fields. In Universal Products Co. v. Montgomery Ward & Co., 6 Cir., 146 F.2d 957, 959, 960, the court said:

"Adjustability only was involved and adjustability is not invention. Paquette v. Potter Mfg. Co., 6 Cir., 46 F.2d 271. See also United States Gypsum Co. v. Consolidated Expanded Metal Co., 6 Cir., 130 F.2d 888, 893."

▪ Furthermore, Dillon 569,550 issued in 1896 disclosed a triangular-shaped ornamental structure in which

---

ing divergent boards defining a V-shaped space, and an inverted V-type ventilator fitting in and closing said space.

"2. In a structural assemblage of the class described, in combination, an attic roof construction embodying outwardly and downwardlly sloping portions including divergent boards defining a V-shaped space, and an inverted V-type ventilator fitting in and closing said space, said ventilator including an inverted V-frame and a panel mounted in said frame and made up of ventilating louvers.

"3. In a structural assemblage of the class described, in combination, an attic roof construction embodying outwardly and downwardly sloping portions includ-

ing divergent boards defining a V-shaped space, and an inverted V-type ventilator fitting in and closing said space, said frame and louvers being adjustable, whereby to adapt the ventilator to varying angular pitches."

3. "4. A ventilator comprising a V-frame and a multiple louver panel mounted between the frame members, the louvers of said panel being adjustable.

"5. A ventilator comprising a V-frame and a multiple louver panel mounted between the frame members, the louvers of said panel being adjustable, said frame being adjustable and said louvers being also adjustable in conjunction therewith."

the side members were pivotally connected at their apex or upper ends and with the base member pivotally attached to the side members so that the side members were laterally expansible and contractible to fit house gables of various pitches. Dillon stated: "My invention relates * * * particularly to gable ornaments; and the object in view is to provide an adjustable gable ornament adapted to be arranged to suit the pitch of the gable." Plaintiffs' counsel endeavors to depreciate the importance of Dillon because of its antiquity. However, it is clear that the adjustable triangular-shaped structure described in Dillon, patented more than a half century ago, discloses and illustrates the adjustable features of the ventilator described in the patent in suit.

Plaintiffs' patent describes the louvers assembled in the frame as being composed of telescopically-connected sections "hingedly connected" at their outer ends to the frame members. The idea of louvers being composed of telescopically-connected sections is old and is shown in Ferguson and in Jones 2,216,413. The specifications of the Ferguson ventilator provide that "the central section is made up of extensible and retractible louvers whose sections are telescopically connected together." Derr 930,743 and Townsend 903,340 disclose a concept of construction for longitudinally extending or adjusting the slats or louvers of a ventilator so that it may be fitted in openings of different widths and sizes. The connection of the louvers to the side members by a pin extending through the knuckle-shaped end of the louver and the side member, as described in plaintiffs' patent, certainly does not represent invention. The idea of two members of a structure being connected by a pin element to permit rotation about the pin is old in many fields. Sweet's catalog illustrates the use of triangular ventilators in the peaks of roof gables. Again it may be noted that plaintiffs admit that the use of telescoping louvers and the idea of an adjustable triangular-shaped

ventilator to be mounted in the peak of a gable do not represent invention.

All of the mechanical parts and the connections of the parts of the ventilator described in plaintiffs' patent, and the method and effect of their operation, have long been known and are within the knowledge and skill of any well-trained mechanic, and particularly within the knowledge of any skilled sheet-metal worker or carpenter. The structure described in plaintiffs' patent represents nothing more than an inverted V-shaped ventilator with a hinge connection at the apex of the side members to permit increasing or decreasing the angle between the side members, and with telescopically-formed slats or louvers assembled between the members. The patent describes the side members of plaintiffs' ventilator as "hingedly connected together" at their apex and the ends of the louvers as "hingedly connected" to the side members, but it may be noted that plaintiffs admit that the use of a hinge to articulate a joint or connection does not represent invention. The structural arrangement of the group of old parts and elements combined in plaintiffs' ventilator certainly does not represent invention within the meaning of the patent law, and the presumption of validity arising from the issuance of the patent in suit is overcome by Dillon, Townsend, Derr, Jones, and other prior art patents and publications not considered by the patent office examiner. The court is convinced that a mechanic skilled in the ventilator art and familar with the teachings of Dillon, Townsend, Derr, Jones, and Ferguson, and the prior art publications could have constructed the ventilator for which plaintiffs claim a monopoly.

The plaintiffs' adjustable inverted V-shaped ventilator has achieved considerable commercial success, but in the absence of invention this success will not entitle them to a patent monopoly on the combination of old elements or parts. Great Atlantic & Pacfiic Tea Co.

258

v. Supermarket Equipment Corp., 340 U.S. 147, 153, 71 S.Ct. 127, 95 L.Ed. 162; Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 62 S.Ct. 37, 86 L.Ed. 58; Toledo Pressed Steel Co. v. Standards Parts, Inc., 307 U.S. 350, 59 S.Ct. 897, 83 L.Ed. 1334; Byrne Mfg. Co. v. American Flange & Mfg. Co., Inc., 6 Cir., 87 F.2d 783, 785; United Drug Co. v. Ireland Candy Co., 8 Cir., 51 F. 2d 226, certiorari denied 284 U.S. 683, 52 S.Ct. 200, 76 L.Ed. 577. To hold with plaintiffs' contention that the Belden patent in suit is valid would in effect grant plaintiffs a monopoly on all ventilator devices and structures embodying an adjustable, V-shaped form with the side members connected at their apex and cross pieces or louvers connected to the side members.

Although plaintiffs' structure may provide a more convenient means for the installation of ventilators in roof gables of varying pitches, it nevertheless does not represent invention within the meaning of the patent law. The plaintiffs' patent adds little, if anything, to the total stock of knowledge in the field of ventilator devices and structures.

For the reasons herein stated the court concludes that all claims of the plaintiffs' patent No. 2,458,134 are invalid because of prior art anticipation and lack of invention. The question of infringement does not arise, as an invalid patent cannot be infringed. Judgment will be entered dismissing the plaintiffs' complaint and determining that all claims of the patent in suit are invalid. The defendant is entitled to recover court costs but not costs of suit.

As the foregoing opinion sets forth the court's findings of fact and conclusions of law, separate findings and conclusions are not necessary. Rule 52 (a), Federal Rules of Civil Procedure as amended, 28 U.S.C.A.; Western Pac. R. R. Corp. v. Western Pac. R. Co., 9 Cir., 197 F.2d 994, 1005.