804

Alan Franklin, of Los Angeles, Cal., for appellants.

Burke and Herron, Mark L. Herron, and Joe C. Burke, all of Los Angeles, Cal., for appellees.

Before WILBUR, MATHEWS, and HANEY, Circuit Judges.

WILBUR, Circuit Judge.

This is an appeal from a final decree of the District Court in a suit brought by appellants for infringement of letters patent No. 1,840,432 issued January 12, 1932, to appellant Bray. The court held that claim 1 of the patent was void; that claims 2 and 3 of the patent were valid but limited in scope and not infringed by the appellees. The alleged invention disclosed by the patent is for an oil well pump.

The record on appeal is voluminous. The transcript contains 417 pages, the book of exhibits 180 pages, and the briefs 354 pages. There are numerous drawings in addition to those contained in the book of exhibits, and physical exhibits consisting of the patented device and the infringing device. Notwithstanding the size of the record, the question of infringement depends upon whether or not a loose bushing in the appellees' device, having an inner diameter of ½" more than the diameter of the pump stem upon which it reciprocates, is the equivalent of the bushing of the patent which fits snugly upon the pump stem and has eight cylindrical apertures ⅜₆" in diameter, so arranged that the centers are upon the circumference of a circle drawn halfway between the pump stem and the outer diameter of the nut. The question of whether the evidence supports the finding and decision that claim 1 of the patent is invalid is a simple one.

The purpose of the patented device as disclosed in claims 2 and 3 of the patent is to keep the anchor of the pump stem free from sand which, if allowed to settle on the anchor, might result in freezing it to the oil well casing so that the pump could not be removed without damaging the well tubing or, perhaps, without withdrawing the entire tubing from the well—an expensive and difficult operation. The patent claim is that as the pump operates, oil is discharged downward through the apertures in the bushing in the form of jets so as to dislodge sand which has settled or is about to settle upon the anchor.

The patented device as shown by claim 1 of the patent is provided with a coupler on the bottom face of the bushing so fashioned so that it may be nonrotatively interlocked with a complementary coupler on the anchor of the pump.

The pump disclosed by the patent is intended for use in deep oil wells, particularly in California, where the oil carries sand. The type of pump is one where the barrel of the pump reciprocates on the stem. In this type of pump one end of the stem must be made fast to the pump tub-

ing. This device, consisting of the stationary stem with its packing and valve and the reciprocating barrel with its valve, and the method of making the stem fast to the pump tubing, constitutes the oil pump. As a matter of fact the entire "pump" is little more than a valve and serves the purpose of the ordinary flap valve in the piston of the old-fashioned single suction pump used in water wells.

In the pump described in the patent an inlet ball valve rests on the top of the stationary hollow stem. The reciprocating barrel is furnished with an outlet ball valve which is a short distance above the inlet valve when the barrel has reached the limit of the downstroke. On the upstroke oil flows through the stem and the inlet valve in its top into the barrel. At the same time the ascending barrel lifts the entire column of oil in the pump tubing causing it to overflow at the surface. On the descending stroke this inlet valve closes and the oil passes up through the outlet valve in the descending barrel. The bushing guide, or nut, to which we refer, incloses the lower end of the reciprocating barrel. On the downstroke of the barrel the space between the bushing and the packing on the stem is extended and filled with oil which flows in through the apertures in the bushing. On the upstroke of the barrel, as the space between the bushing and the packing decreases, the fluid entrapped therein is forced through the apertures producing, appellants claim, jet action of oil, as it moves through the stationary oil in the well toward the anchor which it is desired to keep clear of sand. In the appellees' device the entrapped oil passes through the annular opening between the pipe stem and the bushing which we have above referred to.

With these preliminary explanations the following excerpt from the patent specifications and the three claims involved on this appeal, will be more readily understood.

The patent refers to what we call an "anchor" as a retaining lock and identifies the bushing variously as "bushing," "nut," and "guide." The patent states that:

"A feature of this class of pumps is that the travelling barrel can be utilized as a means of pulling the standing column from a retaining lock when it is desired to remove the pump as a whole from the well without pulling the tubing.

"A common defect of this class of pump is that sand settles on the locking means and freezes the parts to the tubing so that the pump cannot be pulled without great risk of serious injury of parts and possible loss of the well by reason of blocking of the hole when it is impossible to fish out the obstructing parts below the break. For this reason one object of the invention is to maintain the sand in such a constant state of agitation that it cannot pack down on the lock shoe box and lock shoe pin.

"To that end means are provided to cause a positive jet action of liquid over the lock means and keep the sand in a state of suspension so that it will be carried off in the discharge, and therefore prevent 'sanding up.'

"Another object is to provide means for positively interlocking the travelling barrel to the standing lock means to enable the screwing or unscrewing of parts of the rod string in event of need. * * *

"A feature of this pin is that it has a clutch or coupler head 2 to be non-rotatively interlocked with a complementary part 3 on the bottom end of a travelling barrel B. The part 3 is in the form of a bushing having side jaws 4 to mesh with the flat-side head 2 of the pin P thus coupling these parts against rotation when the bushing is lowered to close the coupler parts.

"Further, the bushing is provided with a series of ducts 5 from top to bottom so that as the barrel slides up from bottom position, liquid will be forced down in strong jets and wash sand from the top of the pin P so that this can be readily pulled from its seat in the lock box L. * * *

"Ordinarily barrels, of this class of pumps, are perforated through the sides to allow fluid flow during operation on the standing packer but by means of the jet device 3 providing for the circulation in the present pump the barrel is imperforate and can, therefore, be reversed as above stated."

Claims 1, 2, and 3 of the patent are as follows:

"1. The combination, with a pump of the class having a standing guide column with a working valve and a valved travelling barrel, running on said column; of a bottom guide, on said barrel, running on said column and having a bottom face forming a coupler, and an anchor for the column presenting directly to said coupler

face a top face forming a complementary coupling to be non-rotatively interlocked with the lower guide coupler.

"2. The combination, with a pump of the class having a standing guide column with a working valve and a valved travelling barrel, running on said column; of a bottom guide, on said barrel, running on said column and having a bottom face forming a coupler, and an anchor for the column presenting a top face forming a complementary coupling to be non-rotatively interlocked with the lower guide coupler; said guide having a series of venting ducts which open directly toward the anchor coupler face so that during the strokes of the barrel, ejected liquid is impelled toward the anchor top face to aid ·in prevention of sand accumulation thereon.

"3. The combination, with a pump of the class having a standing guide column with a working valve and a valved travelling barrel, running on said column; of a bottom guide, on said barrel, operating on said column and having a coupler part on its bottom end, and an anchor for said column having a top coupler part complementary to the coupler part of the said guide, whereby the engaged parts may be meshed in non-rotative interlock, and said guide being apertured for the ejection of liquid from the barrel directly toward the effective face of the lower, standing coupler part to aid in preventing sand settlement thereon."

Appellants contend that the trial court erred in holding that claims 2 and 3 of their patent must be narrowly construed— and that as so construed they are not infringed by appellees' device. It is claimed that the annular opening in the appellees' device between the bushing and the standing column or stem accomplishes the same purpose as the apertures in the bushing on the patented device, hence it is an equivalent of the means of the patent and infringes. Appellants have furnished drawings of the end surface of the bushing enclosing a cross-section of the stem with computations as to the area of the openings therein. The patent device is marked "Bray" and according to the computations shows a net area of openings of a little over one-half square inch, while the appellees' apparatus, marked "Hofco," shows net openings of .63 of a square inch. It should be noted, however, that the annular opening immediately surrounding the stem in the drawing of the appellants' device is not disclosed in the patent drawings and is not claimed as a part of the invention. The patent drawings show a tight mechanical fit between the bushing and the stem and the teaching of the patent that relatively strong jets of oil are forced through the apertures by the upward movement of the bushing emphasizes the importance of a tight mechanical fit around the stem. Thus the comparison should be, Bray .22, Hofco .64 of a square inch.

Appellees question the utility of the patent. It is claimed that in actual operation the amount of oil flowing through the apertures is small; that the velocity of the oil flowing through is comparatively slow reaching maximum velocity only when the bushing or guide has traveled a considerable distance upwardly away from the anchor (the guide at the bottom of the down stroke being some 6 inches from the top of the anchor); and that consequently the so-called jet action is a minor sand stirring force. It is urged that so far as appellees' alleged infringing device operates to remove sand from the anchor or lock it is done by the surging of the oil as it is churned by the reciprocating barrel rather than by any concentrated energy resulting from the jet action of the fluid through the apertures of the bushing, as in the patented device of the appellants.

Appellees' principal contention is, however, that the essence of the invention contained in claims 2 and 3 of the patent "resides in the arrangement for expelling fluid from the barrel; * * * that the idea of washing the anchor clear of sand is not new and the trial court was of necessity compelled to seek invention in the particular means shown by the patent to produce it," and that the annular opening of their bushing is not the equivalent of the means shown in appellants' patent. Appellees, moreover, contend that the passage of oil in their device through an annular opening around the pump stem cannot be considered a jet action in the sense contemplated by the patent. Appellees' witnesses computed the velocity of the oil stream through this opening to be not greater than one mile per hour, and appellees estimate that its momentum, that is, its capacity to do work, would be in the proportion of the square of the velocity and that the pump of the appellants' patent has 74.59 times the capacity for work of appellees' device. We think that there

is no escape from appellees' proposition. It is clear from a study of the prior art that some method of escape was provided for oil entrapped by moving parts of the pump, (see Admore pump, first made in 1926 by Bradford Motor Works Co.), and in a patent, No. 1,378,268 issued May 17, 1921, to T. A. Northrup, entrapped oil escaping through horizontal openings was utilized to agitate oil in the tubing and prevent accumulation of sand upon the top of the anchor. We conclude that claims 2 and 3 of appellants' patent must be construed as covering invention only in the particular means by which they obtain vertical jet action, that is, by a close fitting apertured guide or bushing as in the patent, and that appellants' device allowing oil to surge through a loose fitting bushing does not utilize equivalent means nor produce the jet action contemplated by the patent device.

It should be noted here that appellants seek to distinguish certain prior art cited (Admore pump, among others) upon the ground that because of the location of the valves on these pumps, if used in the oil fields of California they would allow the pump barrel to fill with gas and form a "gas lock," while that of the appellants' patent would not. It is sufficient answer to this contention that no claim is made in the patent with reference to gas lock or to the location of these valves. Indeed, there is no suggestion in the patent that the valves are located in the device in such a manner as to prevent gas lock.

Appellants contend that the trial court erred in finding that claim 1 of the patent was anticipated by prior use of the same device and by other patents and that it did not involve invention. The finding of the trial court is fully sustained by the evidence. The patent itself seems to indicate that there is nothing novel in the use of a clutch on the end of the moving barrel to engage a corresponding part on the standing column in order to prevent the parts from turning while the pipe rods are being screwed together or unscrewed.[1] The Admore pump, manufactured and sold by the Bradford Motor Works Company more than two years prior to the application for the patent in suit (February 4, 1929), shows a clutch used for the same purpose and in substantially the same man-

ner as that indicated in claim 1 of the patent. In respect to prior patents, we content ourselves with noting the following which cover substantially the same ground covered by claim 1 of the patent in suit: Patent No. 840,919 issued January 8, 1907, to Philip H. Deis; patent No. 1,323,352 issued December 2, 1919, to W. F. Cummins; patent No. 1,391,873 issued September 27, 1921, to J. A. Whitling; patent No. 1,486,180 issued March 11, 1924, to James C. Dickens.

Decree affirmed.

---

1 See the above quotation from the description portion of the patent.