Harold F. SHERMAN, Plaintiff,

v.

MOORE FABRICS, INC., Defendant.

Civ. A. No. 2431.

United States District Court
D. Rhode Island.

Nov. 27, 1959.

Crowe, Hetherington & Chester, Benjamin C. Chester, Pawtucket, R. I., for plaintiff.

W. R. Hulbert and Wm. W. Rymer, of Fish, Richardson & Neave, Boston, Mass., Richard F. Canning, of Letts & Quinn, Providence, R. I., for defendant.

DAY, District Judge.

This is an action for infringement of U. S. Letters Patent No. 2,804,099 granted to the plaintiff on August 27, 1957 for an invention relating to "Woven Elastic Fabric or Webbing".

In his complaint the plaintiff alleges in substance that he is the owner of said patent (hereinafter sometimes referred to as "the Sherman patent"), a copy of which is annexed to the complaint; that said patented invention is of great novelty and utility and has gone into widespread use, so that it is of great value; that he has given due notice to the public of his patent rights pursuant to 35 U.S. C.A. § 287; that the defendant has been and still is infringing on said patent by manufacturing, using, selling and actively inducing others to use and sell materials embodying the invention covered by the claims of said patent; that he notified the defendant of its infringement prior to the filing of his complaint and prior to the commission by the defendant of the acts complained of; and that the defendant by the commission of said acts has caused him great damages. The plaintiff demands judgment in the sum of $500,000, treble damages, counsel fees and costs.

In its answer the defendant admits the jurisdiction of this Court; admits the issuance of said patent; admits receipt of said notice from the plaintiff charging it with infringement; denies that said patent was legally issued; and asserts that

said patent is wholly invalid and void for want of invention by the plaintiff.

The claims of the Sherman patent read as follows:

"1. A woven elastic fabric or webbing having a face thereof formed in a large part with a soft velvety surface, said fabric or webbing comprising a woven elastic ground or base structure formed by rubber and non-elastic threads interwoven with non-elastic binding threads running in a transverse direction, and having additionally stretchable, permanently crimped all-textile threads interwoven at intervals with and floated outwardly on said woven elastic ground or base structure at a face thereof and extending in the direction in which the fabric or webbing is to stretch, said permanently crimped float threads being characterized by being in an untwisted state and capable of substantial stretching when the base fabric or webbing is stretched and exhibiting, when the latter is contracted, expanded fluffing properties which provide said soft velvety surface on one face of such fabric or webbing.

"2. A woven elastic fabric or webbing as claimed in claim 1 in which all of said floating all-textile threads providing the soft velvety surface sought consist of the highly stretchable elastic permanently crimped threads of a superpolyamide yarn.

"3. A woven elastic fabric or webbing as claimed in claim 1 in which all of said floating all-textile threads providing the soft velvety surface sought consist of permanently crimped nylon threads.

"4. A woven elastic fabric or webbing having a face thereof formed in a large part with a soft velvety surface, said fabric or webbing comprising a woven elastic ground or base structure formed by rubber and non-elastic warp threads interwoven with inelastic filling threads, and having said face or back portion thereof formed in a large part by groups of stretchable permanently crimped all-textile threads interwoven with and floated outwardly on said woven elastic ground or base structure and extending in a warpwise direction of the completed fabric, said permanently crimped float threads being characterized by being in an untwisted state and capable of substantial stretching when the base fabric or webbing is stretched and exhibiting, when the latter is contracted, expanded fluffing properties which provide said soft velvety surface on one face of such fabric or webbing.

"5. A woven elastic fabric or webbing having a face thereof formed in a large part with a soft velvety surface, said fabric or webbing comprising a woven elastic ground or base structure formed by rubber and non-elastic warp threads interwoven with inelastic filling threads, and having additionally, groups of permanently crimped nylon warp threads floated outwardly on a face of said woven elastic ground or base structure and interwoven therewith, said permanently crimped nylon float threads being in an untwisted state and capable of substantial stretching when the base fabric or webbing is stretched and exhibiting, when the latter is contracted, expanded fluffing properties which provide said soft velvety surface on one face of such fabric or webbing.

"6. A woven elastic fabric or webbing having both front and back faces thereof formed with soft velvety surfaces, said fabric or webbing comprising a woven elastic ground or base structure formed by rubber and non-elastic warp threads interwoven with inelastic filling threads, and having additionally, groups of stretchable permanently crimped all-textile threads floated

outwardly on both front and back faces of said woven elastic ground or base structure and being interwoven therewith and extending warpwise of the completed fabric or webbing, said permanently crimped float threads being characterized by being in an untwisted state and capable of substantial stretching when the base fabric or webbing is stretched and exhibiting, when the latter is contracted, expanded fluffing properties which provide said soft velvety surface on both front and back faces of such fabric or webbing.

"7. A woven elastic fabric or webbing as claimed in claim 6 in which all of said floating all-textile threads providing the soft velvety surface sought consist of permanently crimped nylon threads."

Subsequent to the filing of its answer the defendant moved for the entry of summary judgment in its favor under Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A., on the ground that the Sherman patent is invalid for lack of invention as a matter of law. Annexed to the defendant's motion are affidavits in support thereof, together with numerous exhibits (including pertinent excerpts from the prior art). Counter-affidavits have been duly filed by the plaintiff. Finally, it may be noted that the "file wrapper" of the Sherman patent is also a part of the record before me.

The plaintiff first contends that the summary judgment procedure cannot be used in a patent case when the issue of invention is raised unless the claims of the patentee are obviously frivolous. In my opinion this contention is without merit. In George P. Converse & Co. v. Polaroid Corp., 1 Cir., 1957, 242 F.2d 116, Judge Hartigan, speaking for the Court of Appeals, laid down the rule to be followed in this Circuit at page 120:

"We hold that a district court can use summary judgment procedure in determining the validity of a patent where, as here, the issue is the invention, if any, over the prior art

and '(t)he prior art and the patent claims are, without expert aid, easily understandable by anyone of the most modest intelligence.' Vermont Structural Slate Co. v. Tatko Bros. Slate Co., 2 Cir., 1956, 233 F.2d 9, 10, certiorari denied 1956, 352 U.S. 917, 77 S.Ct. 216, 1 L.Ed.2d 123."

To the same effect, see Glagovsky v. Bowcraft Trimming Co., 1959, 1 Cir., 267 F.2d 479, certiorari denied 80 S.Ct. 155; Steigleder v. Eberhard Faber Pencil Co., 1 Cir., 1949, 176 F.2d 604, certiorari denied 1949, 338 U.S. 893, 70 S.Ct. 244, 94 L.Ed. 548; Vulcan Corp. v. International Shoe Machine Corp., D.C.Mass. 1946, 68 F.Supp. 990, affirmed per curiam 1 Cir., 1946, 158 F.2d 520, certiorari denied 1947, 330 U.S. 825, 67 S.Ct. 868, 91 L.Ed. 1275.

The test of invention is clearly stated by the Supreme Court in Cuno Engineering Corp. v. Automatic Services Corp., 1941, 314 U.S. 84, at pages 90–91, 62 S.Ct. 37, 40, 86 L.Ed. 58;

"* * * the device must not only be 'new and useful', it must also be an 'invention' or 'discovery'. Thompson v. Boisselier, 114 U.S. 1, 11, 5 S.Ct. 1042, 1047, 29 L.Ed. 76. Since Hotchkiss v. Greenwood, 11 How. 248, 267, 13 L.Ed. 683, decided in 1851, it has been recognized that if an improvement is to obtain the privileged position of a patent more ingenuity must be involved than the work of a mechanic skilled in the art. * * * That is to say the new device, however useful it may be, must reveal the flash of creative genius not merely the skill of the calling."

And, as the Supreme Court later stated in the much cited case of Sinclair & Carroll Co. v. Interchemical Corp., 1945, 325 U.S. 327 at page 330, 65 S.Ct. 1143, 1145, 89 L.Ed. 1644:

"This test is often difficult to apply; but its purpose is clear. Under this test, some substantial innovation is necessary, an innovation for which society is truly indebted to the efforts of the patentee."

78

The Sherman patent relates to a woven elastic fabric or webbing which has a woven elastic base structure formed by rubber and non-elastic threads interwoven with non-elastic threads running in a transverse direction, and having additionally stretchable permanently crimped all-textile threads interwoven with and floated outwardly on said woven elastic base structure at a face thereof and extending in the direction in which said fabric or webbing is to stretch, said permanently crimped float threads being characterized by being in an untwisted state and capable of substantial stretching when the base fabric or webbing is stretched, and exhibiting, when the latter is contracted, expanded fluffing properties which provide a soft velvety surface on the face of such fabric or webbing.

The plaintiff concedes that weaves with the base structures and floats described in the Sherman patent were old and well known in the art prior to the grant of said patent. But he contends that the introduction of stretchable permanently crimped nylon threads in the surface of the fabric or webbing to produce a thin, soft, velvety face without looping floats constitutes invention. Both the patent itself and the prior art seem to me to be easily understood.

■■ At the outset, it must be observed that in determining whether what the plaintiff did constitutes invention, no consideration can be given to the thinness or non-looping properties of the fabric or webbing produced by him. It is well settled that "a patentee can claim no more of his invention than is covered in the claims set forth in his application and allowed." Trico Products Corp. v. Apco-Mossberg Corp., 1 Cir., 1930, 45 F.2d 594, at page 598. Patentability cannot be made to depend upon the teachings of subsequent events or upon after-thoughts which come to mind when the validity of a patent is put in issue in litigation. The protection afforded by a pat-

ent is limited to the claims made therein; and although the specifications may be referred to in order to explain or make clear the claims of a patent, they cannot enlarge those claims. Freedman v. Friedman, 4 Cir., 1957, 242 F.2d 364; Price-Trawick, Inc. v. Gas Lift Corp., 5 Cir., 1939, 101 F.2d 134; Bray v. Hofco Pump, Ltd., 9 Cir., 1939, 93 F.2d 804; H. Schindler & Co. v. C. Saladino & Sons, Inc., 1 Cir., 1936, 81 F.2d 649; Belden v. Air Control Products, Inc., D.C.Mich. 1956, 144 F.Supp. 248, affirmed 6 Cir., 1957, 249 F.2d 460. Here neither the claims nor the specifications make reference to either the thinness of or non-looping in the fabric or webbing produced by plaintiff; hence neither of these properties can be said to have been disclosed by said patent or to be within its scope.

■ The plaintiff is accordingly confined to the proposition that the use of permanently crimped nylon threads in an untwisted state as "floats", so-called, in an old weave to produce a fabric or webbing having a soft, velvety face and capable of substantial stretching amounts to invention. For the purposes of this motion, the defendant has the burden of establishing as a matter of law that this proposition is not maintainable. Rothe v. Ford Motor Co., 1958, 102 U.S.App.D.C. 331, 253 F.2d 353; Belden v. Air Control Products, Inc., supra.

It is undisputed that the weave employed by the plaintiff, and the resultant smooth velvet-like face of the fabric or webbing, were both taught by Brown as early as 1923.[1] Moreover, the latter result was also taught by Dean at an even earlier date.[2] Of the prior art, most important is the Billion patent [3] (which was issued some six years before the Sherman patent). Billion taught that the use of a permanently crimped nylon yarn in such a weave would produce a fabric characterized by a soft feel and a great and stable elasticity. What the

1. See Brown, Elastic and Non-Elastic Narrow Fabrics, 1923, pages 33–38.
2. See Great Britain Letters Patent No. 2359, sealed December 23, 1879.
3. See United States Letters Patent No. 2,564,245, issued August 14, 1951.

plaintiff did, in effect, was to substitute the new type of yarn Billion had produced in the old weave described by Brown.

■ Ordinarily, the substitution of a modern material with known characteristics for another material does not amount to invention and does not meet the test of patentability. B. F. Goodrich Company v. United States Rubber Co., 4 Cir., 1957, 244 F.2d 468; Pollard v. American Phenolic Corp., 4 Cir., 1955, 219 F.2d 360; Lincoln Stores, Inc. v. Nashua Mfg. Co., 1 Cir., 1946, 157 F.2d 154; Fowler v. Honorbilt Products, Inc., 3 Cir., 1942, 131 F.2d 153; United States Appliance Corp. v. Beauty Shop Supply Co., 9 Cir., 1941, 121 F.2d 149; United Merchants & Manufacturers, Inc. v. Sidney Blumenthal & Co., D.C.R.I.1957, 156 F.Supp. 865. But in certain exceptional circumstances such a substitution can amount to invention. In the landmark case of Smith v. Goodyear Dental Vulcanite Co., 1876, 93 U.S. 486, at page 496, 23 L.Ed. 952, the Supreme Court pointed out:

"If * * * a substitution * * * develops new uses and properties of the article formed, it may amount to invention."

To the same effect, see also Lincoln Stores, Inc. v. Nashua Mfg. Co., supra; Carbide & Carbon Chemicals Corp. v. Coe, 1938, 69 App.D.C. 372, 102 F.2d 236.

■ That is not to say, however, that simply because the article formed exhibits a new use or function, invention is present. The ultimate test is succinctly stated in Belden v. Air Control Products, Inc., supra, 144 F.Supp. at page 253:

"To constitute patentable invention an aggregation of old, unpatentable elements or parts, or substituted equivalents, must cooperate to produce a *new, unobvious,* and *unexpected* result. Application of Bowen, 197 F.2d 553, 39 C.C.P.A., Patents, 1027. If invention is absent, mere utility and novelty are not alone sufficient to sustain the validity

of a combination patent." (Emphasis added.)

And see Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 1950, 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162; Deering Milliken Research Corp. v. Electric Furnace Corp., 6 Cir., 1958, 261 F.2d 619.

■ In the case at bar the plaintiff did no more than substitute a new material for an old one, knowing from the prior art that said new material possessed certain characteristics and that said characteristics would produce the desired result in the fabric or webbing manufactured by him. As the Supreme Court said in Sinclair & Carroll Co. v. Interchemical Corp., supra, 325 U.S. at page 335, 65 S.Ct. at page 1147:

"(S)electing a known compound to meet known requirements is no more ingenious than selecting the last piece to be put into the last opening in a jig-saw puzzle. It is not invention."

It may be granted that the plaintiff's product proved to be better suited for a variety of uses than products theretofore employed for those uses by the textile industry. But the plaintiff did no more than to substitute crimped nylon yarn for old yarns—filament, rayon or spun rayon—in the old weave which he adopted. What he did was plainly indicated by the prior art and does not rise to the dignity of invention.

■ Even though it be assumed that the plaintiff's product filled a long-felt need in the industry and that it met with great commercial success, these facts alone could not impart patentability to it under the circumstances of this case. Such facts cannot serve to validate a patent which is clearly lacking in invention. Jungersen v. Ostby & Barton Co., 1949, 335 U.S. 560, 69 S.Ct. 269, 93 L.Ed. 235; George P. Converse & Co. v. Polaroid Corporation, supra; McCord Corp. v. Beacon Auto Radiator Co., 1 Cir., 1952, 193 F.2d 985; Hanovia Chemical & Mfg. Co. v. David Buttrick Co., 1942, 1 Cir., 127 F.2d 888.

While it is true that a presumption of validity attaches to every patent, 35 U.S.C.A. § 282, it is well settled that "the presumption of validity is hardly more than a procedural device to establish a *prima facie* case that cannot survive in the face of undisputed facts showing there is no invention". Rothe v. Ford Motor Co., supra, 253 F.2d at page 355. And this is particularly true where, as here, some of the prior art (particularly that disclosed by the Brown text) was not considered by the Patent Office. Compare Rosaire v. Baroid Sales Division, National Lead Co., 5 Cir., 1955, 218 F.2d 72; Alex Lee Wallau, Inc. v. J. W. Landenberger & Co., D.C.N.Y.1954, 121 F.Supp. 555.

There is in this case no genuine issue as to any material fact; and therefore, since the prior art clearly anticipates the Sherman patent, I find and conclude that said patent is invalid for want of invention. The defendant's motion for summary judgment in its favor is granted.