Harold E. MARASCO et al., Plaintiffs, Appellants,

v.

COMPO SHOE MACHINERY CORPO-RATION, Defendant, Appellee.

No. 6139.

United States Court of Appeals First Circuit.

Dec. 26, 1963.

Robert B. Russell, Boston, Mass., with whom Russell, Chittick & Pfund, Boston, Mass., was on the brief, for appellants.

Robert L. Thompson, Boston, Mass., with whom Gerald Gillerman, Dike, Thompson, Bronstein & Mrose and Slater & Goldman, Boston, Mass., were on the brief, for appellee.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

HARTIGAN, Circuit Judge.

This is an appeal from a judgment of the United States District Court for the District of Massachusetts, entered April 5, 1963, declaring invalid all claims of U. S. Patent No. 2,962,736 issued to plaintiff-appellant Harold E. Marasco on December 6, 1960 on application filed February 19, 1959 and assigned by him to plaintiff-appellant Marasco Shoe Machinery Company. The four claims of the patent were found by the lower court to have been anticipated by Italian Patent No. 547,479 granted August 30, 1956 to Alessandro Malverdi and by the "Ghini" machine which embodies the Malverdi patent and which was in use in this country in 1958.

Plaintiffs initially brought an action for infringement against defendant-appellee Compo Shoe Machinery Corporation, contending that a split pad box used in the production of shoes and manufactured by Compo infringed the patent in issue. Defendant counterclaimed and asked the court to declare the Marasco patent invalid for (1) want of invention, (2) anticipation and (3) inoperativeness. Chief Judge Sweeney, properly deciding *all* of the issues before him, held that the Marasco patent for a split pad box constituted an invention over the conventional unitary pad box and that the patent disclosed an operative device. However, on the issue of anticipation he found the Marasco patent was invalid. The court further stated that if, on appeal, its judgment as to invalidity should be reversed, it finds all plaintiffs' claims infringed by the defendant.

The pertinent background to this case has been set forth by the lower court and we quote it here:

"The patent in suit relates to a two-section pad box for use in making shoes having 'Louis' heels by the

tabless process. The Louis heel, which is used on ladies' shoes, is characterized, in part, by having applied to its front, or breast, a thin flap which is an integral part of the sole. Prior to the development of the tabless process, the sole would be applied to the shoe and cemented to the shoe with the use of a conventional pad box before the heel was attached. That part of the sole which becomes the breast of the heel, was split. The upper part, the part closest to the shoe, is known as the 'tab' while the other half, the breast of the heel, is the 'leaf'. The tab was then also cemented to the shoe, the heel was loosely attached over the tab and the leaf, cemented to the heel by hand, in that order.

"In the tabless process (which was developed in Europe about 1955), as the name implies, the tab is eliminated. The heel is attached to shoe first, and sole and heel breast are cemented to the bottom of the shoe and to the heel in one operation.* This requires a pad box by which pressure can be exerted in both directions at the same time.

"Marasco, who from 1933 to 1947 had been an employee of the defendant and a protege of its then president, in the early 1950's started designing and making shoe machinery on his own and in 1953 he formed the Company. In 1957 a shoe manufacturer asked him to devise a pad box which could simultaneously cement the sole to the bottom of the shoe and the leaf to the breast of the heel.

"The conventional pad box is essentially an oval metal frame which holds a rubber diaphragm covered with leather. The lasted shoe is placed on the diaphragm and is held in place by the sole press while the diaphragm is inflated to exert pressure against the surface to be ce-

mented. Marasco's solution to the problem posed by the manufacturer was simply to cut a conventional pad box in two and bolt the two sections back together again in such a manner as to leave room for insertion of the heel. This two-part pad box employs two diaphragms with separate air intakes, one of which exerts pressure against the sole and breast of the heel while the other exerts a counter pressure against the back of the heel. This two-part pad box became, with a few refinements, the subject of the patent in suit."

The "Ghini" machine, fashioned after the Malverdi patent, differs from the Marasco machine in that the rearpart pad section is pivoted to a lever-type handle immediately behind the rear pad which, when pulled back, allows the insertion of heels of various sizes and, when manually closed, pushes the rearpart pad section against the heel while lifting both rearpart and forepart sections against the sole press attached to the above frame. The shoe is then held securely in place while even pressure is applied against the heel from both sides to avoid breakage.

Once the handle has been pushed forward to its adjusted limit, the adjustment being dependent upon the thickness of the heel, it is not necessary for the operator to maintain pressure against the handle in order to keep it from popping out. The action of the linkage (the links controlled by the handle slightly passing the position of straight alignment so that they cannot fall back into an unlocked position) and the inflation of the pads maintain the entire device under pressure.

■■ Where all the elements of a claimed invention are found in a previously constructed and used machine which is capable of performing the same functions as the claimed invention, then the latter has been anticipated by the former. Ranco, Inc. v. Gwynn, 128 F.2d

---

* Cementing, in fact, involves several steps, but in this context the word is used to denote only the last step, holding in place the two parts to be united.

437 (6th Cir. 1942). Here, the leading elements or their equivalents of the Marasco patent are found in the prior patent of Malverdi. The machines constructed from the two patents are both equipped with complimentary forepart and rearpart pad box sections containing separate flexible pads with vertical portions for engaging opposite faces of an interposed heel. Both provide for equal pressure to be asserted against the heel and the pads to be inflated by means of fluid pressure inlets. The Marasco machine holds the pad sections stationary and in place against longitudinal pressure developed by inflation of the pads through the use of bolts connecting together the external lugs of the forepart and rearpart pads. The equivalent is found in Malverdi in the use of a linkage which becomes mechanically rigid during inflation and accomplishes the same function. Dr. Joseph Harrington, Jr., an expert witness whose qualifications were not objected to by the plaintiffs, successfully testified that all the elements or their equivalents contained in the four claims of Marasco were found by him to be contained in the Malverdi machine. The lower court correctly concluded that the only difference between the two patents was the movement of the rear pad box in Malverdi.

Plaintiffs attempt to overcome the obvious similarities in the two machines by claiming functional advantages due to their fixed two part pad box arrangement. But contrary to their assertion, there is no more adjustment involved in the operation of the "Ghini" machine than there is in the operation of the Marasco machine where the bolts must be unfastened and metal spacers added in order to provide for increases in heel sizes with various style changes. In fact, Marasco's machine appears to be more of a regression in this area rather than an advance over the prior art. Nor do we find the "Ghini" machine to be more complicated than Marasco's and plaintiffs fear that the operating handle of the "Ghini" machine can pop out in the operator's face has already been laid to rest.

It is true that the Patent Examiner cited the Malverdi patent in allowing Marasco's claims, but any presumption of validity to be gathered from that fact has been sufficiently overcome. Also, there is indication that the examiner's judgment may not have been based on evidence completely accurate. We are referring to a letter sent to the examiner by Marasco's attorney informing the examiner that the handle of the "Ghini" machine was held in operative position only by manpower. The text of the Italian patent, a translation of which was possessed by the plaintiffs, stated the exact opposite.

A judgment will be entered affirming the judgment of the district court.