**EASTERN PLASTICS CORP.**

v.

**Fernando M. RONCI.**

Civ. A. No. 3087.

United States District Court
D. Rhode Island.

July 21, 1967.

Herbert B. Barlow and Herbert B. Barlow, Jr., Providence, R. I., for plaintiff.

Max Schwartz, Leo M. Goldberg, Providence, R. I., for defendant.

## OPINION

PETTINE, District Judge.

This is an action for declaratory judgment of patent invalidity of a United States Patent No. 3,050,877 brought pursuant to 28 U.S.C. §§ 2201 and 2202 and a counterclaim for infringement of United States Patent No. 3,050,877 brought pursuant to the Patent Laws of the United States.

The Eastern Plastics Corp., a Maine corporation having a principal place of business at Sanford, Maine, avers that it has been charged by the defendant, a citizen of the United States residing in Providence, Rhode Island with infringing U.S. Letters Patent No. 3,050,877 dated August 28, 1962 which is evidenced by a letter dated September 5, 1962 sent to the plaintiff by the defendant.

The defendant is the owner of United States Letters Patent No. 3,050,877 which said patent relates to a lift for a heel, and all of the claims of the patent include the following elements:

(a) A roughened elongated shank (element 15 in the patent)

(1) of a size to be forced into a hole located in a shoe heel (element 14 in the patent)

(b) A head on said shank (element 17, 21 and 25 in the patent)

(c) A solid synthetic resin plastic lift molded to said head (element 18, 22 and 26 of the patent)

(1) the head being constituted by an interlocking form substantially embedded in said plastic lift (groove shown in Figure 4 of the patent)

(2) the lift interlockingly adhered to the head.

The plaintiff contends that the patent in issue is invalid by reason of obviousness and anticipation of the claims by the prior art.

It is the opinion of this court that the issue of anticipation and obviousness is dispositive of the case and it need not consider other issues as they may have been raised.

The test of patentability is set forth in section 103 of the Patent Act (35 U.S.C. Sec. 103) enacted in 1952:

"A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made."

The decision in Graham, et al. v. John Deere Co., 1966, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545, makes it clear that section 103 "was not intended by Congress to change the general level of patentable invention. * * * (it) was intended * * * as a codification of judicial precedents embracing the Hotchkiss condition * * *." (383 U.S. 1, 17, 86 S.Ct. 684, 693) The Hotchkiss condition is that

"(U)nless more ingenuity and skill * * * were required * * * than were possessed by an ordinary mechanic acquainted with the business, there was an absence of that degree of skill and ingenuity which constitute essential elements of every invention. In other words, the improvement is the work of the skilful mechanic, not

that of the inventor." Quoted in Graham, from Hotchkiss v. Greenwood, 1850, 52 U.S. (11 How.) 248, 267, 13 L.Ed. 683.

ANTICIPATION AND OBVIOUSNESS

The plaintiff relies primarily on the patent to Trela 2,937,461 to show that the subject completely anticipated (disclosure in said prior art of a substantially identical thing with that for which the patent is sought) under 35 U.S.C. § 102 and it argues that the combination of Trela with the patent to Gilowitz 1,946,737 shows obviousness under 35 U.S.C. § 103.

The prior patent to Trela No. 2,937,461 granted May 24, 1960 relates to a detachable top lift and clearly discloses a heel of a lady's shoe provided with a hole extending inwardly from the lower end thereof, an elongated roughened shank driven into the hole, the shank having a head thereon to which there is molded in interlocking form a plastic lift.

To better understand the issues, a summary of the history of commercial heels is recited. During the middle 1950's, commercial heels were then made, for the most part, of wood and as time went on, they became increasingly "high style," that is the heels increased in height and the shanks of the heels decreased in horizontal cross-sectional area. After a time, they acquired an extreme style exemplified by the so-called "pencil or thin heels."

As the styles became progressively more extreme, the problem of reinforcement became more pronounced. Over the years, this reinforcement was done by driving nails, commonly referred to as dowels, heightwise through the heels. These dowels were made of metal or of wood having its grain extending lengthwise of the dowel. Sometimes the wood dowel was roughened and the metal dowel pin was serrated, longitudinally ribbed, etc. to hold the dowel better in place in the wood of the heel and also to hold the parts of the heel together in the event that the lower portion of the heel broke during the wearing of the shoe to which

the heel is attached. With the high style heel, the problem of attaching the top-lift or tap on the lower end of the heel increased by reason of the fact that the cross-sectional area of the lower end of the heel decreased. It was common practice to nail the top-lift to the bottom of the heel and in such practice when the top-lift has been worn, to remove it from the heel and replace it by another lift. The smaller the lower or top-lift receiving face of the heel the more difficult it is to attach the lift to the heel. Moreover, in nailing top-lifts to the heel, the material of the wood becomes perforated during the successive replacements and thus the heel finally becomes weak and splits.

The patent in suit discloses a high style (not extreme) heel said to be reinforced by a so-called "shank 15" forced into a hole 14 of the heel, the shank having a head 17 (Fig. 2), 25 (Fig. 5) or a grooved head 21 (Fig. 4) which is embedded by molding in a top-lift or tap 18, 26 or 22. In the finished heel, the shank is held in the bore of the heel by the action of flutings on the shank with the wood of the heel and the top-lift and tap is secured in place in the heel organization by reason of the fact that the lift or tap is molded and said to be interlocked with the head of the shank.

The plaintiff has proven to this court beyond any reasonable doubt that the patent to Trela 2,937,461 is a complete answer to everything recited in the claims of the patent in suit.

Claim 1 is the broadest, specifying that the shank has a roughened surface thereby to form a grip in the heel hole, that the shank is headed, and that the lift is of a synthetic resin molded to interlock with said head, which head is substantially embedded in the lift.

The Trela patent relates to a detachable top-lift and clearly discloses a heel of a lady's shoe provided with a hole extending inwardly from the lower end thereof, an elongated roughened shank driven into the hole, the shank having a head thereon to which there is molded, in interlocking form, a plastic lift.

Mr. Douglas R. Buchanan testified for the plaintiff as an expert. After analyzing the elements of Exhibit 1, the patent in suit, he was shown Exhibit 3, the patent to Trela 2,937,461 granted May 24, 1960.

Without going into the detailed technical testimony, suffice it to say, he clearly pointed out an equivalent of each element of each claim in the said patent to Trela. He found as he stated complete response of the Ronci patent in the Trela patent.

The patent at issue is a simple one and the testimony of Mr. Buchanan fitted the pieces together to form a perfectly clear picture, understandable in every detail.

These are summarized as follows:

| Ronci Claim 1 | Trela disclosure |
|---|---|
| "a shoe heel lift attachment" | the posts and their respective heads shown in Figs. 1, 3, 4, 5 and 7 |
| "for insertion into a hole" | bore 24 of the heel, 20, Fig. 1, or the corresponding bore in the heel of Figs. 7 and 8 |
| "located in a shoe heel, comprising a roughened elongated shank" | post 25, Fig. 1; post 40, Fig. 3; post 51, Fig. 4; post 60, Fig. 5; and post 81, Fig. 7 |
| "of a size adapted to be forced into said hole of the heel and to form a grip therein by means of the roughened portion"—whereby the shank is strongly attached to the heel— | the various posts are provided with protuberances, flutes, machine screw threads or drive screw threads, so as to grip the wall of the bore of the heel |
| "a head on said shank" | heads 38, 44, 54, 64 and 80 are secured to the respective posts 25, 40, 51, 60 and 81 |
| "and a solid synthetic-resin plastic lift molded to the head" | the solid synthetic-resin plastic lift would be the lift in Fig. 1. In Fig. 1, it is 26; in Fig. 7, it is 82 and in Fig. 8, it is 82. |
| "the head being constituted by an interlocking form substantially embedded in said plastic lift" | the heads 38 and 80 appear to be cylindrical but the heads 44, 54 and 64 have apertures 48, lugs 49, cross slots or grooves 55 and slots or grooves 65, 66 |
| "and the lift is interlockingly adhered to the head" | |

However, this witness did conflict in one respect with the testimony of the plaintiff's other expert witness, Mr. Carl F. Seibert, Jr.

Mr. Buchanan testified that the Ronci patent discloses a shank which is longer and affords more reinforcement.

858

In answer to the question whether Trela gave an altogether new and useful result, he replied, "I would say that the result is generally the same, but it gives more reinforcement than the Trela patent."

On the other hand, the plaintiff's other expert, Mr. Carl F. Seibert, Jr., more clearly described this issue and his testimony may be summarized as follows:

1. The dowel in the Ronci patent, as shown, did not reinforce the heel but on the contrary weakened it because it was not the right length in relation to the heel; that a dowel must be long enough (in the Ronci patent it should have extended to the heel seat rather than end, as the drawing shows, at a stress point) or short enough; that the Trela heel would be less likely to break. In explanation, he stated:

"* * * these things are a little more complicated than appear on the surface. A heel of the configuration shown on the Ronci patent made in any of the common plastic materials actually would not require to be doweled at all. It would be less likely to fail if it had no dowel in it than if you just nailed a lift on the bottom. You have a dangerous middle ground condition on doweling which is very important to know when you are making heels. They either have to be long enough or short enough. If the end of the dowel ends in the dangerous area you have a problem (the witness indicated said area on the exhibit of the Ronci patent). It can weaken the heel rather than strengthen it. Now if the Trela lift had been put on the Ronci heel I would not expect to see any trouble in the field of breakage on that heel. I have some heels to illustrate that point."

He also testified that the Ronci patent teaches nothing as to what is required to be a reinforcing agent; neither the specifications or the claims say anything as to the length of the shank.

An analysis of this witness's testimony and the Ronci patent leaves little

significance to the reinforcement purpose in the patent in suit. It is pregnant with undue breadth as well as indefiniteness and vagueness by the use of the word "reinforcing" in defining the shank or dowel pin.

It is inescapable that Ronci has disclosed and claimed a shank or dowel pin no different from dowel pins old and well known in the art as exemplified by Gilowitz, Monfils or Stern and has defined such pins or shanks by the functional appellation "reinforcing" which is unduly broad and indefinite since no bounds or limits of the term are in the specification as required by 35 U.S.C. § 112.

Accordingly, any posts, dowel pins or shanks which are disclosed in the various patents of record and which are secured to top-lifts or taps, can be regarded as reinforcing posts, pins or shanks within the scope of the Ronci patent and are therefore proper prior art for use in anticipating the Ronci claims.

Nor can it be said that the head offers any invention. When a lift is molded on the head of a post, dowel or shank it is common expedient, as exemplified by Trela, and other prior patents and accordingly not invention to provide said head with an irregular shape or to form grooves, holes or equivalents thereof on the head in order to insure that the head shall be firmly embedded in the lift. Counsel for defendant, for all practical purposes, admitted that the Ronci head was no different from Trela excepting as to the one with apertures.

In its position relative to the Trela patent, the defense argues that the Trela heel is different from the one shown in Ronci; that it does not disclose a heel which needs reinforcement; that the heel is part of the invention.

There is little merit to this argument which can readily be seen by comparing the two patents as to this aspect.

It will be noted that while claim 1 calls for the unit which is shown in Fig. 3 of Ronci patent No. 3,050,877 and is adapted to be applied to a heel, claim 2 calls for *"a reinforced heel* having a body

portion of relatively weak material provided at its upper end with a relatively large heel seat surface and at its lower end with a relatively small tread end," and claims 3 and 4 for *"a heel"* or *"a plastic heel"* for a woman's shoe comprising a broad top heel seat portion tapering to an elongated very narrow bottom portion to form a narrow high heel having a very narrow tread end. Although the Trela patent describes his heel 20 (column 1, lines 70 to 72) as being made of wood or plastic in its upper portion 21 and of metal, such as aluminum, in its lower portion 22, Trela contemplates the heel 20 being entirely of transparent plastic (column 2, lines 4 to 7) and states that "regardless of the material of the portion 22 of the heel 20 only a single, unlined axial bore such as 24 is provided * * *." (column 2, lines 11 to 13). Trela also explains that the post 28 is of metal such as aluminum (column 2, line 46). The drawing, Fig. 1, shows a one-piece heel and the description indicates that the heel may be made entirely of wood or plastic. Trela also shows a heel which is high style (not extremely) and the Trela heel answers the description of the heel defined in claims 2, 3 and 4.

In claim 2 the hole in the heel is defined as extending longitudinally of the body portion of the heel from the tread end toward the heel seat surface. (It doesn't state how far into the heel the hole extends). The bore 24 illustrated in the Trela patent answers this description. The Trela specification states (column 2, line 14) that the bore extends *at least* one-half an inch into the heel indicating that Trela contemplated extending the bore further into his heel if desirable. The claim goes on to define an elongated *reinforcing* shank constituted of material much harder than that of the body portion of the heel driven into (but not how far into) the hole.

A further study shows that although claims 2, 3, and 4 recite as a combination the heel and a reinforcing shank and the plastic top-lift, there is in truth no new combination.

The features of claim 2, mainly "the reinforcing shank being roughened to grip in the hole, a head on the shank, and a solid lift molded to said head, the head being constituted by an interlocking form substantially embedded in the plastic lift whereby the shank is strongly attached in the heel by the grip and the lift is interlockingly adhered to the head" are present in the Trela construction and are, therefore, completely met by Trela.

Claim 3 of Ronci recites, "a heel for a woman's shoe comprising a broad top heel-seat portion tapering to an elongated very narrow bottom portion to form a very narrow high heel having a very narrow tread end, said heel having a central vertical hole extending from the tread end through said narrow portion an elongated rigid reinforcing shank extending into said hole through said narrow portion of said heel, means for frictionally retaining said reinforcing shank in said hole, said reinforcing shank having an enlarged flat head, a tap for the tread end of said heel, said head being grooved and said tap being molded to said head."

Trela reads on this in every respect— the bore, the post and reinforcement, for the Trela post does afford some reinforcing effect for the heel and can be regarded as a reinforcing shank. The opposite halves of the post of the Trela construction may yield toward each other to facilitate insertion of the post into the heel. However, in view of the well known practice of reinforcing heels, it would not require the exercise of invention to make the post rigid or should breakage be encountered to extend the post further up into the heel. Trela shows means for frictionally retaining the reinforcing shank in the heel, a reinforcing shank that has an enlarged flat head and a tap for the tread end of the heel, the head being grooved (slotted or channeled) at 55 (Fig. 4) and 65, 66 (Fig. 5) and the tap being molded on the head.

Claim 4 is like claim 3 except that it recites the means for frictionally retaining the reinforcing shank in the hole as including longitudinal flutings. Such

flutings appear on the post 40 (Fig. 3) of the Trela patent.

The claims in the patent in suit offer little over the prior art. The changes are not inventive.

B. F. Sturtevant Co. v. Massachusetts Hair & Felt Co., 1 Cir., 122 F.2d 900 at 907:

"Few principles of the law of patents are better established than 'that a mere carrying forward of the original thought—a change only in form, proportions, or degree, doing the same thing in the same way, by substantially the same means, with better results— is not such an invention as will sustain a patent.' Market Street Cable Railway Company v. Rowley, 155 U.S. 621, 629, 15 S.Ct. 224, 228, 39 L.Ed. 284."

This court finds without doubt complete response of each element of each claim of the Ronci patent in suit in the patent to Trela. The plaintiff has carried its full measure of proof in this regard.

■ This court finds that the patent in suit (United States Letters Patent No. 3,050,877) is invalid under 35 U.S.C. § 102 as being directed to an invention that is anticipated by the prior art cited by the plaintiff.

There are some very basic principles of patent law applicable to this case.

■ Not every change, not everything new is entitled to the reward of monopoly. There must be a significant advance in the arts and sciences.

"The design of the patent laws is to reward those who make some substantial discovery or invention, which adds to our knowledge and makes a step in advance in the useful arts. Such inventors are worthy of all favor. It was never the object of those laws to grant a monopoly for every trifling device, every shadow of a shade of an idea, which would naturally and spontaneously occur to any skilled mechanic or operator in the ordinary progress of manufactures. Such an indiscriminate creation of exclusive privileges tends rather to obstruct than to stim-

ulate invention." Atlantic Works v. Brady (1882) 107 U.S. 192, 200, 2 S.Ct. 225, 231, 27 L.Ed. 438. See also Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp. (1950) 340 U.S. 147, 152–153, 71 S.Ct. 127, 130, 95 L.Ed. 162.

■ Novelty is a prerequisite for a patent (35 U.S.C. § 102). But even though the device "is not identically disclosed or described as set forth in section 102 * * * if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. * * *" a patent may not be obtained. (135 U.S.C. § 103)

Note the Supreme Court cases of Graham v. John Deere Co., et al. (supra), Calmar, Inc. v. Cook Chemical Co. and United States v. Adams, et al. (1966) 383 U.S. 1 and 39, 86 S.Ct. 684 and 708, 15 L.Ed.2d 545 and 572.

■ 1. The Patent Act of 1952 "was not intended by Congress to change the general level of patentable invention" theretofore enunciated by the courts. (383 U.S. at 17, 86 S.Ct. at 693)

2. Obviousness is evaluated as follows:

"The scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined." Graham, et al. v. John Deere Co., 383 U.S. at 17.

From the record it cannot be refuted that heels of molded plastic materials with an extremely narrow shank is old and that it was nothing new, at the time of the patent in suit, to reinforce said heels with a metal reinforcing core. Prior to the advent of the invention at issue, a metal top-lift had been secured to the end of the reinforcing dowel though the

testimony showed it was objectionable because it would damage rugs, floors, etc.

Plaintiff's Exhibit 3 contains a number of patents of which the court need only mention in addition to Trela as already discussed. Monfils patent No. 1,949,940 dated March 6, 1934 and Gilowitz patent No. 1,946,737 dated February 13, 1934.

The metal dowels in some cases were smooth but in many cases the dowels were roughened by prongs, longitudinal ridges or equivalents thereof. Such dowels extended different distances into the heels from the lower ends of the heels and were of different diameters in accordance with the shape, size and material of the heel to be reinforced.

The defendant did not invent any method of reinforcing but only enveloped the head of his dowel or shank in a plastic material such as shown in Figs. 4 and 5 of the patent in suit.

It is this court's opinion that it is within the skill or shop practice experience of a mechanic in the shoemaking art to substitute, without the exercise of invention, a longer and stronger post, such for example as the dowel or post 21 shown in the Gilowitz patent 1,946,737 for corresponding posts respectively shown in the Trela patent. Dowel pin 21 of Gilowitz may be substituted for the posts of Trela, without the exercise of invention; that is pin 21 of Gilowitz can be secured to the heads 38, 44, 54, 64 or 80 of the Trela construction to provide a post top-lift unit which when applied to a high style heel would, without question, anticipate claims 2 to 4 of the Ronci patent. The post top-lift resulting from the above-mentioned combination would anticipate claim 1 of the Ronci patent and thus the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which the subject matter pertains. Making a long post of the Trela disclosure can hardly be nonobvious.

In concluding that the claims of the Ronci patent in suit were obvious as described above, this court is not unmindful of the defendant's oral arguments. (R. 649)

To the Court's question, " * * * If you took the post 21 of the Gilowitz patent and substituted it for the Trela post, would you come up with the Ronci patent?", the defendant would not answer in the negative.

The test of obviousness must ultimately be determined by the court with all its failings in the specialized fields of inventions. Unfamiliarity of the art before it can only be met by resorting to the evidence and form its own independent opinion from the testimony of the expertise presented. The opinion of those familiar with the subject may weigh heavily on the court and to arbitrarily disregard such impressions would be unwarranted and arbitrary. This is, of course, especially so when the court, on its independent analysis, can find no direction to travel except that given to it by such evidence. So it is in this case. The court is in complete agreement with Mr. Buchanan who testified:

"It is my opinion that it will be no invention if you are substituting the post of Trela for the metal dowel pin shown in Gilowitz."

"It would be obvious to substitute the post 21 of the Gilowitz for anyone of the posts of Trela and such a combination would produce a construction which *without question* would *anticipate all* the claims of Ronci." (R. 100) (emphasis added)

The defendant in furtherance of his position also argues commercial success. This court does not agree with the defendant's conclusion that the testimony fully supports his stand. However, even if it had been proven, it would be but a secondary consideration and has no force once obviousness of the alleged invention has been established.

In Calmar, Inc. v. Cook Chemical Co., and United States v. Adams, 383 U.S. 1 and 39, 86 S.Ct. 684 and 708 where commercial success was the major factor which impelled the lower courts to hold the patent valid despite the closeness of

the prior art, the Supreme Court evaluated the prior art on its merit and, having found obviousness to be present, held the patent invalid despite the very significant proved commercial success.

In Sherman v. Moore Fabrics, Inc., 179 F.Supp. 74 at 79, Chief Judge Edward W. Day of this very court said:

"Even though it be assumed that the plaintiff's product filled a long-felt need in the industry and that it met with great commercial success, these facts alone could not impart patentability to it under the circumstances of this case. Such facts cannot serve to validate a patent which is clearly lacking in invention. (citing cases)"

■ The statute provides that a patent, when once issued by the Patent Office, is presumed to be valid, and the burden of establishing invalidity is on the defendant. However, if the court, in the exercise of its fact-finding prerogative, determines that what is claimed has been taught or that the differentiation which the claims make over what is taught is obvious and therefore unpatentable, the court must and should declare the claim invalid. This is precisely what occurred in Marasco v. Compo Shoe Machinery Corporation (C.A. 1, 1963) 325 F.2d 695.

In Sherman v. Moore Fabrics, Inc., supra, 179 F.Supp. at page 80 it was said:

"While it is true that a presumption of validity attaches to every patent, 35 U.S.C.A. § 282, it is well settled that 'the presumption of validity is hardly more than a procedural device to establish a prima facie case that cannot survive in the face of undisputed facts showing there is no invention.'"

The Second Circuit Court of Appeals in Lorenz v. F. W. Woolworth Co. (1962) 305 F.2d 102, 105 said:

"Appellant places great weight on the presumption of validity attached by statute to a duly issued patent (35 U.S.C. § 282 (1958)). The presumption of validity relieves the patent holder of the burden of establishing that validity as a requisite for the successful maintenance of an infringement action, and places the burden of establishing invalidity on the alleged infringer who asserts it. * * * More than that, the most that can be said of the presumption is that it requires that reasonable doubt on the question of validity be resolved in favor of the patent holder. See Mumm v. [Jacob E.] Decker & Sons, 301 U.S. 168, 171, 57 S.Ct. 675, 81 L.Ed. 983 (1937). The statute does not require that the presumption be accorded the weight of actual evidence or that the use of the presumption should affect a decision of invalidity that would otherwise be reached with confidence. This court has recognized the unavoidable obstacles to an accurate and impartial decision that are inherent in ex parte proceedings in the patent office, Guide v. Desperak, 249 F.2d 145, 148 (2d Cir. 1957). We cannot properly allow decisions of that office to alter the preponderance of the evidence on the question of validity."

To this court, the plaintiff has satisfied the burden of proof.

## CONCLUSIONS OF LAW

1. The court has jurisdiction of the parties and of the subject matter of this action.

2. The defendant is the owner of the entire right, title and interest in and to United States Letters Patent No. 3,050,877.

3. United States Letters Patent No. 3,050,877 is invalid under 35 U.S.C. 102 as being directed to an invention that is anticipated by the prior art cited by the plaintiff.

4. Claims 1–4 of United States Letters Patent No. 3,050,877 are invalid under 35 U.S.C. § 103 for the reason that the differences which exist between the claims of the patent and the cited prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which such subject matter pertains.

5. Plaintiff has not infringed or contributorily infringed U.S. Patent No. 3,050,877.

6. The defendant's counterclaim is hereby dismissed with costs.